UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SHANISE SHIDAGIS,

                          Plaintiff,

v.                                                            3:23-CV-1107
                                                              (DNH/ML)
BROOME COUNTY SHERIFF'S
OFFICE, B.C.S.O. Medical Unit,
Doctor,

                          Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

SHANISE SHIDAGIS
  Plaintiff, *Pro Se*
169 Hawley Street, ER-2-7
Binghamton, New York 13901


MIROSLAV LOVRIC, United States Magistrate Judge


## <u>ORDER and REPORT-RECOMMENDATION</u>

The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis*, filed by Shanise Shidagis ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2.)  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application, and recommend that Plaintiff's Complaint be dismissed in its entirety with leave to amend.  (Dkt. Nos. 1, 2.)

## I.     BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that the doctor employed by the Broome County Sheriff's Department ("Defendant") was negligent to her medical needs. (*See generally* Dkt. No. 1.)  Plaintiff's Complaint is difficult to decipher but she appears to allege that on October 22 of an unspecified year, in the Broome County Jail, Defendant examined Plaintiff, did not order that Plaintiff be taken to the hospital or conduct the appropriate tests of Plaintiff's blood, which resulted in Plaintiff "[n]eeding life[']s highest amount of blood (9 units) transfusion."  (Dkt. No. 1 at 5.)

Based on these factual allegations, Plaintiff appears to assert one claim of medical negligence.  (*See generally* Dkt. No. 1.)  As relief, Plaintiff seeks $2,000.  (*Id*. at 5.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's *in*

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]     The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

*forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[3]

 Plaintiff is advised that the ability to litigate an action without prepayment of fees is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses. *See In re Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons."). The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]" 28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183 (1989). For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege. *See Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 309-310 (D.C. Cir. 2008) (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]'")).

---

[3] Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

Plaintiff's litigation history in this district suggests that she is on the brink of being found to have abused the privilege of proceeding IFP.  In addition to the case currently before the Court, Plaintiff has filed seven other lawsuits in this district within the last twelve months.[4]  In all of the other actions, Plaintiff requested, and was granted, permission to proceed without prepayment of fees.  (*Shidagis I*, Dkt. No. 4; *Shidagis II*, Dkt. No. 4; *Shidagis III*, Dkt. No. 4; *Shidagis IV*, Dkt. No. 4; *Shidagis V*, Dkt. No. 5; *Shidagis VI*, Dkt. No. 4; *Shidagis VII*, Dkt. No. 5.)

Common to the other dismissed actions filed by Plaintiff in this district (including, as will be discussed below, the current Complaint under consideration in this report) is her failure to include factual allegations in her complaints that demonstrate that the Court has jurisdiction to consider her claims.[5]  Accordingly, Plaintiff is hereby cautioned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/or a recommendation to the Chief District Judge that a filing injunction be issued against Plaintiff, barring her from filing any future lawsuits in this district without prior permission.

---

[4]       *Shidagis v. Broome Cnty. D.S.S.*, Case No. 3:22-CV-1224 (BKS/ML) ("*Shidagis I*"); *Shidagis v. Broome Cnty. Dep't of Soc. Servs.*, Case No. 3:22-CV-1299 (GTS/ML) ("*Shidagis II*"); *Shidagis v. Broome Cnty. Sheriff's Office*, Case No. 3:22-CV-1300 (DNH/ML) ("*Shidagis III*"); *Shidagis v. Broome Cnty. D.S.S.*, Case No. 3:23-CV-0031 (BKS/ML) ("*Shidagis IV*"); *Shidagis v. Dominguez*, Case No. 3:23-CV-0032 (BKS/ML) ("*Shidagis V*"); *Shidagis v. Citgo Gas Station*, Case No. 3:23-CV-0192 (DNH/ML) ("*Shidagis VI*"); and *Shidagis v. Manager at Citgo Gas Station*, Case. No. 3:23-CV-1108 (DNH/ML) ("*Shidagis VII*").

[5]       The Court also notes that the allegations contained in Plaintiff's Complaint here are almost identical to the facts alleged and claims that were dismissed in *Shidagis III*.  (*Compare* Dkt. No. 1, *with Shidagis III*, Dkt. No. 1.)

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts

plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is

a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v.*

*Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*,

762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court

must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of*

*Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal

of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*,

15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review,

action challenging state court mortgage foreclosure judgment because the court lacked

jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005)

(citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d

Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint

for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter

jurisdiction.").

"In reviewing a complaint . . . the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v.*

*Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

The Court lacks subject matter jurisdiction over this case.  Federal courts are courts of limited jurisdiction and must independently verify the existence of subject matter jurisdiction before proceeding to the merits.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Doe v. United States*, 833 F.3d 192, 196 (2d Cir. 2016).  "Congress has granted district courts original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, *see* 28 U.S.C. § 1332."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013).  "[F]ailure of subject matter jurisdiction is not

waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (citations omitted); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of establishing subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Here, there is no "federal question" jurisdiction because "[c]laims for negligence and medical malpractice arise under state law," not federal law, "and a federal court generally will not have original jurisdiction over the claims unless complete diversity exists."[6] *See Urena v. Wolfson*, 09-CV-1107, 2010 WL 5057208, at *13 (E.D.N.Y. Dec. 6, 2010) (citation omitted); *see also Wilson v. Neighborhood Restore Dev.*, 18-CV-1172, 2018 WL 2390143, at *3 (E.D.N.Y. May 18, 2018) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 182 (2d Cir. 2015)) (holding that "breach of contract, breach of the warranty of habitability,

---

[6]     To the extent that Plaintiff's Complaint is construed liberally as asserting a claim of medical indifference pursuant to the Fourteenth Amendment (assuming that Plaintiff was incarcerated as a pre-trial detainee in the custody of Defendant) and 42 U.S.C. § 1983, I still recommend dismissal for failure to state a claim. "There are two prongs to such a claim: an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong . . . or mental element prong, showing that the officer acted with at least deliberate indifference to the challenged conditions." *Burrell v. Maciol*, 19-CV-1629, 2022 WL 16755840, at *9 (N.D.N.Y. Aug. 26, 2022) (Baxter, M.J.) (quoting *Drew v. City of New York,* 18-CV-10719, 2022 WL 19705, at *5 (S.D.N.Y. Jan. 3, 2022)) (internal quotation marks omitted), *report and recommendation adopted by*, 2022 WL 4719172 (N.D.N.Y. Oct. 3, 2022) (McAvoy, J.). "[E]vidence of mere negligence will not suffice. Thus, mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard for a substantial risk of serious harm." *Fenton v. Provow*, 20-CV-1564, 2022 WL 3904110, at *4 (N.D.N.Y. Aug. 5, 2022) (Stewart, M.J.) (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019)), *report and recommendation adopted by*, 2022 WL 3908799 (N.D.N.Y. Aug. 30, 2022) (Sannes, J.). The Complaint alleges mere negligence and thus—to the extent it is construed as alleging a claim for medical indifference—fails to state a claim upon which relief may be granted.

negligence, personal injury and fraud . . . are state law claims.").  In addition, because the complaint alleges that Plaintiff and Defendant are citizens of New York (Dkt. No. 1 at 1-2), there is no diversity jurisdiction.  *Lever v. Lyons*, 16-CV-5130, 2021, WL 302648, at *9 (E.D.N.Y. Jan. 28, 2021) (no diversity jurisdiction where parties were all citizens of New York).  Moreover, the amount at stake is not more than $75,000.  (Dkt. No. 1 at 5.)

    As a result, I recommend that Plaintiff's claims be dismissed for lack of subject matter jurisdiction.[7]

## V.    OPPORTUNITY TO AMEND

    Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

---

[7]    The Court also notes that "[a]lthough a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located."  *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  Thus, Defendant is not a proper party amenable to suit.

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[8]

     Although I have serious doubts about whether Plaintiff can amend to assert an actionable

claim and given that this is Plaintiff's initial complaint, out of an abundance of caution, I

recommend that Plaintiff be permitted to amend her Complaint to assert a claim of medical

indifference.

     If Plaintiff chooses to file an amended complaint, she should note that the law in this

circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of

a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp.

35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth

facts that give rise to the claims, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act.  In addition, the revised

pleading should allege facts demonstrating the specific involvement of any of the named

---

[8]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

      **ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

      **RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because the Court lacks subject matter jurisdiction over the claims asserted therein; and it is further

      **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[9]

      **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10]  Such objections shall be filed with the

---

[9]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[10]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September  29 , 2023
       Binghamton, New York

_Miroslav Lovric_
Miroslav Lovric
U.S. Magistrate Judge

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 12 of 101

2018 WL 4185705
Only the Westlaw citation is currently available.
<u>For Online Publication Only</u>
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

**MEMORANDUM AND ORDER**

Joan M. Azrack, United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the

prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**

On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**

**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against

Case 3:23-cv-01107-DNH-ML  Document 5  Filed 09/29/23  Page 13 of 101

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the 🚩 RPAPL § 1303 and 🚩 § 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts

which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C. The Instant Action

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

 **\*3**  Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not

notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review
The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

### 1. Fed. R. Civ. P. 12(b)(1)
Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or

constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. Fed. R. Civ. P. 12(b)(6)
**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata* ).

### B. *Rooker-Feldman* Doctrine
Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can

entertain a direct appeal from a state court judgment);

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker–Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011).

This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since these judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–CV–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820,

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 16 of 101

at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (*See* Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender [t]he lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids— to overturn the New York Supreme Court judgment of foreclosure. See 🚩 Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid."

🚩⚠ Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*.[7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

*\*6* Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." 🚩 Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See 🚩 Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated

claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata.* Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata.* First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl.

Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata.*"); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶ ¶ 3,

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 18 of 101

8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

### D. **Collateral Estoppel**

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

 *8 "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 19 of 101

underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005)) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel.[9]

## E. Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's

Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

## F. Leave to Amend

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 20 of 101

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

## Footnotes

1    Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2    Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3    The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4    To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5    According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6    Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7    Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8    "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9    Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 21 of 101

**Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)**

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5057208
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jose Rafael URENA, Plaintiff,
v.
Yan WOLFSON, M.D., New York Downtown
Hospital; Robert Beaudouin, M .D., and BOP
Metropolitan Detention Center, Defendants.

No. 09–CV–1107 (KAM)(LB).
|
Dec. 6, 2010.

**Attorneys and Law Firms**

Jose Rafael Urena, Butner, NC, pro se.

Steven C. Mandell, Barry M. Schreiber, Peter C. Cridland, Aaronson, Rappaport, Feinstein & Deutsch, LLP, Michael Francis Madden, Alexandra Fridel, Robert T. Whittaker, Martin, Clearwater & Bell, LLP, New York, NY, Kenneth M. Abell, United States Attorneys Office, Brooklyn, NY, for Defendants.

*MEMORANDUM AND ORDER*

MATSUMOTO, District Judge.

**\*1** On December 9, 2008, Jose Urena ("plaintiff") commenced this *pro se* action against defendants Robert Beaudouin, M.D. ("Beaudouin"), United States Bureau of Prisons Metropolitan Detention Center, ("MDC," together with Beaudouin, "Federal Defendants"), Yan Wolfson, M.D. ("Wolfson"), and New York Downtown Hospital ("NYDH," together with Wolfson, "Non–Federal Defendants"), alleging constitutional violations pursuant to 42 U.S .C. § 1983, *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("Bivens"), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* and New York state negligence and medical malpractice statutes. Plaintiff allegedly sustained injuries to his bladder, scrotum, and abdomen while incarcerated at the MDC in 2006. This case was initially filed in the Southern District of New York and transferred to this court by order dated February 23, 2009.

Pending before the court are: (1) defendant NYDH's motion to dismiss and motion for summary judgment; (2) defendant Wolfson's motion to dismiss; and (3) defendant Beaudouin's and the MDC's motion to dismiss and motion for summary judgment. For the reasons set forth below, NYDH's and Wolfson's motions to dismiss and for summary judgment are granted in part and denied in part; the MDC's motion for summary judgment is granted; and Beaudouin's motion for summary judgment is granted in part and denied in part.

*BACKGROUND*

**I. *Procedural History***

Plaintiff commenced this action *pro se* on December 9, 2008, against defendants Beaudouin, MDC, Wolfson, and NYDH. Liberally construed, the amended complaint [1] alleges that defendants were negligent, committed medical malpractice, and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

On June 3, 2009, Magistrate Judge Bloom held an initial telephone conference with the parties. (ECF No. 22, Transcript of Telephone Conference ("Tr.").) During the course of the call, plaintiff advised that he suffered his injuries in 2006. Judge Bloom informed plaintiff, *inter alia,* that his claims against the federal defendants would be governed by the FTCA and were barred by the applicable two-year statute of limitations. (*See* ECF No. 22, Tr. at 7.) Judge Bloom did not specifically state that plaintiff's state law tort claims could proceed against the non-federal defendants.

Plaintiff filed an amended complaint on November 2, 2009. (ECF No. 45, Amend. Compl.) Discovery followed. Defendants filed the pending motions between March 5 and March 26, 2010. Defendant MDC moves to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), arguing first, that a defendant who acts under the color of federal, rather than state, law is not proper defendant in a § 1983 action; and second, that sovereign immunity protects a federal agency from liability under *Bivens.* Defendant Beaudouin moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that plaintiff failed to present evidence to create an issue of fact as to whether Beaudouin was personally involved in a violation of plaintiff's constitutional rights. Both federal defendants also move for summary judgment on the ground that the court lacks subject matter jurisdiction because plaintiff failed to exhaust his

administrative remedies under the Prison Litigation Reform Act ("PLRA"), 🔖 42 U.S.C. § 1997(e)(a).

**\*2** Defendants NYDH and Wolfson move to dismiss the 🔖 § 1983 claims for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and/or for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that they are not state or federal actors. In the alternative, defendant NYDH moves for summary judgment under Fed.R.Civ.P. 56.

## II. *Undisputed Material Facts* [2]

Unless otherwise indicated, the undisputed material facts, as set forth in the current record and the parties' Rule 56.1 Statements, are as follows. Plaintiff is an inmate who was housed at the MDC from July 6, 2005 to March 21, 2007. (ECF No. 67, Defendants Robert Beaudouin and Metropolitan Detention Center's Rule 56.1 Statement of Material Facts as to Which No Genuine Issue Remains to be Tried ("Fed. Defs. R. 56.1 Stmt.") at ¶ 1.) NYDH is a private medical institution doing business as a private not-for-profit corporation. (N.Y.DH Local Rule 56.1 Statement of Facts ("NYDH R. 56.1 Stmt.") at ¶ 1.)

Defendant complained of pain and other bladder-related symptoms to medical personnel at the MDC, including defendant Beaudouin, between at least May 12, 2006 and November 12, 2006. (Exhibit L to Declaration of Alexandra Fridel in Support of NYDH's Motion for Summary Judgment ("Fridel Decl.") at B000000053, B000000041.) On September 21 and October 5, 2006, plaintiff was brought to Dr. Wolfson's office at NYDH by the Bureau of Prisons for urology examinations, including a cystoscopy, after which a diagnosis of bladder cancer was reached. (ECF No. 80, Ex. 2, L. Civ. R. 56.1(a) Statement of Undisputed Facts in Support of Motion to Dismiss on Behalf of Yan Wolfson, M.D. ("Wolfson R. 56.1 Stmt.") at ¶ 2; ECF No. 82, Affidavit of Yan Wolfson, M.D. ("Wolfson Aff.") at 7.) On November 2, 2006, Dr. Wolfson performed a transurethral resection of bladder tumors on plaintiff at the NYDH. (Wolfson R. 56.1 Stmt. at ¶ 3; NYDH R. 56.1 Stmt. at ¶¶ 4–5.) On November 3, 2006, plaintiff returned to the MDC after his first surgery. (Fed. Defs. R. 56.1 Stmt. at ¶ 3.) He was found by Dr. Wolfson to be in stable condition and fit for confinement. (N.Y.DH R. 56.1 Stmt. at ¶ 7.) On November 13, 2006, plaintiff was transported from the MDC to the emergency room at NYDH after he continued to complain of pelvic pain and inability to

urinate. (*Id.* at ¶ 8.) Plaintiff was diagnosed with a bladder perforation and immediate surgical repair was advised. (*Id.* at ¶ 9.) Plaintiff refused surgical repair on November 13, 2006 and did not give consent to surgical repair until November 17, 2006. (*Id.* at ¶ 10.) On November 17, 2006, Dr. Wolfson performed a second surgery on plaintiff to repair his bladder perforation. (Wolfson R. 56.1 Stmt. at ¶ 4; Fed. Defs. R. 56.1 Stmt. at ¶ 4; NYDH R. 56.1 Stmt. at ¶ 11.) Plaintiff had an unremarkable post operative course at NYDH and was discharged in stable condition on November 22, 2006, with no activity or dietary restrictions. (N.Y.DH R. 56.1 Stmt. at ¶ 12.)

**\*3** Upon admission to a BOP facility, all inmates are given an Admission and Orientation ("A & O") booklet that advises them of the policies and procedures of both the BOP and of the individual institution. (Fed. Defs. R. 56.1 Stmt. at ¶ 8.) The A & O Booklet sets forth in detail the Administrative Remedy process and advises inmates of the proper method to start the Administrative process. (*Id.*) BOP's computerized database, SENTRY, did not indicate that plaintiff filed any claims under the BOP's Administrative Remedy process while he was housed at the MDC, between July 6, 2005 until March 21, 2007. (*Id.*) Plaintiff's original complaint, however, attached forms entitled "Central Office Administrative Remedy Appeal" and "Regional Administrative Remedy Appeal." (ECF No. 4–2, Compl., at 8, 9.) Moreover, plaintiff asserts in his opposition to the federal defendants' motion that he filed claims with the BOP. (*See* ECF No. 62 at 4; ECF No. 87 at 2.)

## DISCUSSION

### I. *Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) Standard*

Under Fed.R.Civ.P. 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1); 🔖 *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova,*

201 F.3d at 113. In deciding a Rule 12(b)(1) motion to dismiss, the court may rely on and refer to evidence outside the pleadings. *J.S.,* 386 F.3d at 110.

## II. *Summary Judgment Standard*

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 83 (2d Cir.2001).

**\*4** Nevertheless, the nonmoving party cannot rest "merely on allegations or denials" but must instead "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also National Westminster Bank USA v. Ross,* 676 F.Supp. 48, 51 (S.D.N.Y.1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) ( "[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion.").

Nor can the nonmoving party rest only on the pleadings. *Celotex,* 477 U.S. at 324 ("Rule 56(e) requires the nonmoving party to go beyond the pleadings."); *Davis v. New York,* 316 F.3d 93, 100 (2d Cir.2002). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence which would be admissible, as required by Fed.R.Civ.P. 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

material fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted ." *Id.* at 249–50 (internal citations omitted).

## III. *Defendant MDC*

Defendant MDC argues that plaintiff's claims against it must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. (*See* ECF No. 66, Memorandum in Support of Defendants Robert Beaudouin & The Metropolitan Detention Center's Motion to Dismiss, Pursuant to Fed.R.Civ.P. 12(h)(3), and for Summary Judgment Pursuant to Fed.R.Civ.P. 56 ("Fed.Defs.Mem.") at 5–8.) Defendant MDC first argues that it is a federal agency and § 1983 only provides relief against defendants who act under the color of state law. (*Id.* at 6–8.) Defendant MDC further contends that to the extent that the complaint is construed as alleging constitutional tort claims under *Bivens,* it should be dismissed because sovereign immunity protects federal agencies and instrumentalities. (*Id.*) In response, plaintiff argues that "Mr. Urena believes that this Honorable Court has subject matter jurisdiction pursuant to 28 USC § 1331." (*See* ECF No. 87 at 1.) For the reasons discussed below, the claims against defendant MDC must be and are dismissed for lack of subject matter jurisdiction.

The Supreme Court has determined that a suit filed under § 1983 cannot proceed against a federal defendant. *See Wheeldin v. Wheeler,* 373 U.S. 647, 650 n. 2, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (holding that federal officers are not liable under § 1983). MDC is a federal entity and thus is not a proper defendant to a § 1983 suit.

**\*5** Further, although a party may allege a *Bivens* claim against the federal government because an action against a federal agency is deemed brought against the United States, such suits are barred under the doctrine of sovereign immunity, unless immunity is waived. *See FDIC v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607

(1980) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). A suit against the MDC is deemed to be brought against the United States, but because neither defendant MDC nor the United States has explicitly waived its sovereign immunity, a *Bivens* suit against both is barred. Accordingly, the court grants summary judgment in favor of the MDC to the extent that plaintiff's complaint may be construed to allege claims under *Bivens* and § 1983.

### IV. *Defendant Beaudouin*

#### a. Exhaustion of Administrative Remedies under the PLRA

Defendant Beaudouin first argues that he is entitled to summary judgment pursuant to Fed.R.Civ.P. 56 because plaintiff failed to exhaust his administrative remedies under the PLRA. Beaudouin argues that the PLRA exhaustion requirement applies to "any suit challenging prison conditions" and that "plaintiff never filed a single administrative complaint during the approximately twenty-month period he was housed at the MDC." (ECF No. 66, Fed. Defs. Mem., at 12, 14.)

In opposition to Beaudouin's motion for summary judgment and the BOP's declaration that plaintiff failed to exhaust his administrative remedies, plaintiff sets forth several arguments. In his "Response in Opposition to Defendants' Letters and Request that the Defendants' [sic] Provide the Requested Interrogatories and Documents Pursuant to Fed. R. Civ. Pro. 37(a)," plaintiff states that he "was not aware that he had to file the administrative procedure and agrees that he failed to do this." (ECF No. 57 at 2.) In apparent contradiction of this statement, plaintiff submits in opposition to the federal defendants' motion that he "sent a BP–229(13) and a BP–230(13) to the Regional office and Central Office ... thereafter; not fully understanding the administrative procedure coupled with the fact that he did not receive a response, [he] filed the instant claim." (ECF No. 62 at 4.) Plaintiff also attaches to his original complaint two forms entitled "Central Office Administrative Remedy Appeal" and "Regional Administrative Remedy Appeal," which he alleges he sent to the BOP administrative offices. (ECF No. 4–2, Compl., at 8, 9.) Plaintiff also argues that filing an administrative grievance would be "frivolous ... because it does not allow monitary [sic] awards." (ECF No. 57 at 2.) Finally, plaintiff argues that "special circumstances," including his limited understanding of the English language and his lack of awareness of the administrative remedy

process, excuse his failure to exhaust his administrative remedies. (ECF No. 62 at 4–7; ECF No. 87 at 2.) As discussed below, the court finds, based on the record, that a material issue of fact exists as to whether plaintiff exhausted his PLRA remedies.

**\*6** The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to any suit challenging prison conditions, including § 1983 and *Bivens* lawsuits. *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("Thus federal prisoners suing under *Bivens* ... must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). Moreover, § 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Exhaustion of administrative procedures is a prerequisite even where the plaintiff seeks relief, such as money damages, not available in grievance proceedings. *Id.* at 524.

The inmate grievance program required for prisoners in the custody of the Federal Bureau of Prisons is set forth in 28 C.F.R. § 542.10(a) (2004). The administrative review process mandates that an inmate first report the issue informally to the prison staff, and the staff should attempt to resolve the issue. *Id.* at § 542.13(a). If the inmate is dissatisfied with the staff's resolution, the inmate can then pursue the formal three-tiered administrative remedy process set forth at 28 C.F.R. § 542.10–16.

Here, defendant Beaudouin argues that plaintiff "never filed a single administrative complaint during the approximately twenty-month period he was housed at the MDC." (ECF No. 66, Fed. Defs. Mem., at 14.) The federal defendants state that they performed a search of BOP's computerized database, SENTRY, and that plaintiff did not file any administrative complaints while in custody at the MDC, between July 6, 2005 and March 21, 2007. (Fed. Defs. 56.1 Stmt. at ¶ 8.) Plaintiff, however, answered "Yes," to the question "Did you file a grievance in the jail, prison or other correctional facility

where your claim(s) arose?" in his initial complaint in this case. (ECF No. 4–2, Compl., at ¶ IV(E).) Moreover, plaintiff alleged in his complaint that he completed a BP8 form and that he did not receive a response from the MDC. (*Id.* at ¶ IV(F).) Further, the federal defendants ignore the documents attached to plaintiff's complaint that appear to be two appeals from grievances, dated October 15, 2007, in which he alleges that "under the 14th Amendment my constitutional rights are being violated." (*Id.* at 8, 9.) Indeed, Nicole McFarland, staff attorney at the MDC, affirmed that she only searched the SENTRY records for complaints plaintiff filed while in custody at the MDC between July 6, 2005 and March 21, 2007, and not for any complaints that plaintiff may have filed after being transferred from the MDC in March 2007 and prior to filing the instant complaint in December 2008. (ECF No. 68, McFarland Decl., at ¶ 3.) Finally, in his opposition memoranda, plaintiff repeatedly asserts, albeit, not under oath, that he complied with the prison's grievance procedure. (*See, e.g.,* ECF No. 62 at 4 ("Mr. Urena initially field [sic] his BP–8 ... knowing that it was apparently being twarted [sic], Mr. Urena sent a BP229(13) and a BP–230(13) to the Regional Office and Central Office (see Copys [sic] attached to original complaint)); ECF No. 87, at 2 ("Mr. Urena explained that he did indeed attempt to file the administrative remedy in the initial application.").)

**\*7** Plaintiff's assertions that he filed a grievance with the prison, standing alone, cannot defeat Beaudouin's motion for summary judgment. However, the court finds that plaintiff's assertion that he filed two "appeals" of administrative remedies in 2007, and attached copies to his original complaint, provides circumstantial evidence that plaintiff filed initial complaints at an earlier date. Coupled with plaintiff's repeated insistence in his opposition memoranda that he filed administrative grievances, the court cannot conclude with certainty that plaintiff did not exhaust his PLRA remedies. Accordingly, the court declines to grant defendant Beaudouin summary judgment on the ground that plaintiff failed to exhaust his PLRA remedies.

### b. Personal Involvement in Constitutional Violation

Defendant Beaudouin next argues that summary judgment should be granted on the ground that he was not personally involved in an alleged violation of plaintiff's constitutional rights. (ECF No. 66, Fed. Defs. Mem., at 8–12; ECF No. 69, Beaudouin Decl., at ¶¶ 4–7.) In response, plaintiff argues that "it was Dr. Beaudouin that initially did the consultation for the results that led to the surgery ... therefore, it can reasonably be said that that Dr. Beaudouin had knowledge that Mr. Urena

had been sent to the hospital and had returned back to the detention center; therefore, the court should find that Dr. Beaudouin knew or should have known that Mr. Urena was at MDC but failed to do a follow up on him after his return from the hospital." (ECF No. 62 at 3.) As discussed below, the court has construed plaintiff's complaint as alleging, *inter alia,* constitutional violations by Dr. Beaudouin for (1) delaying and denying treatment to plaintiff prior to his initial surgery to remedy his bladder cancer; and (2) failing to adequately monitor plaintiff's recovery in between the first and second surgeries, allegedly resulting in extreme pain to plaintiff. The court finds that material issues of fact exist regarding defendant Beaudouin's personal involvement in these alleged violations and therefore denies his motion for summary judgment.

An Eighth Amendment claim, based on 42 U.S.C. § 1983 or *Bivens,* against prison officials arising out of allegedly inadequate medical treatment requires proof of "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To establish deliberate indifference constituting "a constitutional violation under the Eighth Amendment, an inmate must meet both an objective and a subjective requirement." *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999).

Under the objective prong, the plaintiff must establish that an "official denied treatment needed to remedy a serious medical condition." *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). Under this prong, "the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.' " *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998)).

**\*8** Under the subjective prong of the analysis, the plaintiff must prove that that the official denied treatment with a "sufficiently culpable state of mind." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). This requires that the prison official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Hathaway,* 37 F.3d at 66 (citing *Farmer v. Brennan,* 511 U.S.

825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)). To demonstrate this prong of the deliberate indifference standard, officials must " 'intentionally deny[ ] or delay[ ] access to medical care or intentionally interfere with the treatment once prescribed.' " *Demata v. New York State Corr. Dept. of Health Servs.,* No. 99–0066, 1999 U.S.App. LEXIS 22955, at *4, 1999 WL 753142 (2d Cir. Sept. 17, 1999) (quoting *Estelle,* 429 U.S. at 104–05). The Second Circuit has reserved classifying delays in providing necessary medical care as "deliberately indifferent" for "cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Demata,* 1999 U.S.App. LEXIS 22955, at *5, 1999 WL 753142 (citations omitted). In addition to the objective and subjective components, it is well-established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

While defendant Beaudouin contends that no issue of material fact exists with respect to the alleged lack of his personal involvement in plaintiff's medical care, he inexplicably ignores the plainly contradictory BOP medical records that his counsel supplied to counsel for NYDH and which the non-federal defendants submitted in support of their motion for summary judgment. (Fridel Decl., Ex. L.) [3] Specifically, in his declaration, Beaudouin narrowly construes plaintiff's claims and states that his records do not indicate that he examined plaintiff at any time between November 3 and November 13, 2006, and effectively ignores the allegations regarding the lack of care prior to plaintiff's first surgery on November 3, 2006. (ECF No. 69, Beaudouin Aff., at ¶ 5.) Dr. Beaudouin's sworn statement, however, is directly contradicted by his medical notes, dated November 12, 2006, in which he notes that plaintiff complained to him of "pain in stomach" and stated that he "had difficulty making bowel movements" on that date. (Fridel Decl., Ex. L, at B000000041.) Dr. Beaudouin also made notations on November 12, 2006 of an apparent examination of plaintiff and his findings regarding plaintiff's heart, lungs, abdomen, and extremities and stamped his signature on the page of plaintiff's medical records. (*Id.*)

Further, the court is troubled by the government's overly narrow construction of the temporal parameters of plaintiff's

allegations in the complaint which alleges, *inter alia,* as follows: "After numerous requests for medical attention from symptoms I was experiencing, the health service unit of [MDC], under the directives of Robert Beaudoin, Md [sic] finally sent me to an outside hospital for medical exam from my complaint. It took over one year for this to happen from the first time I reported this [sic] symptoms." (ECF No. 45, Amend. Compl., at ¶ 2(D).) Thus, plaintiff's complaint alleges that Dr. Beaudouin delayed in transferring plaintiff to a hospital for the initial diagnosis and surgery, in addition to alleging that he failed to adequately monitor plaintiff's recovery in between the first and second surgeries. (*See id.*)

**\*9** Although defendant Beaudouin's affidavit inaccurately addresses his treatment during the limited ten-day window between plaintiff's first and second surgery, (*see* ECF No. 69, Beaudouin Aff., at ¶ 6), Beaudouin does not address whether was involved in treating plaintiff prior to the initial surgery. (*See generally id.*) Indeed, had the government thoroughly reviewed plaintiff's medical records from the MDC, it is clear that Beaudouin oversaw plaintiff's medical care prior to plaintiff's surgery and made notations of numerous encounters with plaintiff. (*See, e.g., id.* at B000000047, dated July 7, 2006 (plaintiff complained of "seeing blood and pus upon urination .... Also c/o seeing blood in Bathroom tissue post BM); *id.* at B000000048, dated September 6, 2006 (plaintiff complained of "seeing blood and pus ... in urine once a month").) That defendant Beaudouin fails to address plaintiff's allegations that he delayed in providing medical treatment prior to plaintiff's initial surgery, and that he did not conduct a thorough review of plaintiff's BOP medical records, raises serious concerns. Further, in light of the foregoing documentary evidence in the BOP medical records that flatly contradicts sworn statements and arguments by defendant Beaudouin, and considering plaintiff's apparent confusion at his deposition and his limited understanding of the English language, the court finds unavailing defendant Beaudouin's argument that plaintiff testified that he had "no recollection of having ever been treated by Beaudouin, does not know how Beaudouin came to be named as a defendant in this case, does not know where Beaudouin worked, does not know what Beaudouin looks like, and has no recollection of ever having submitted a complaint to Beaudouin." (ECF No. 66, Fed. Defs. Mem., at 11.) For the foregoing reasons, the court finds that there are disputed material facts regarding defendant Beaudouin's personal involvement in the alleged violations of plaintiff's constitutional rights.

The court next considers whether plaintiff has presented evidence establishing that there is a material issue of fact with respect to both the objective and subjective requirements for an Eighth Amendment claim of deliberate indifference to a serious medical need. On a motion for summary judgment, the moving party may show that there is no material issue of fact regarding the objective prong by presenting evidence that plaintiff's medical need was not a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998)). However, the court cannot make this determination based on the evidence in the medical record regarding plaintiff's diagnosis of and surgery for bladder cancer and his associated complaints of pain. Accordingly, Beaudouin's motion for summary judgment on plaintiff's constitutional claims is denied.

### V. *NYDH and Wolfson*

**\*10**  Defendants NYDH and Wolfson move to dismiss plaintiff's federal § 1983 or *Bivens* claims against them on the ground that they are not state or federal actors acting under the color of state or federal law. (*See generally* ECF Nos. 75, Memorandum of Law in Support of Motion to Dismiss and Motion for Summary Judgment on Behalf of Defendant New York Downtown Hospital ("NYDH Mem."); ECF No. 80, Memorandum of Law in Support of Motion to Dismiss by Yan Wolfson, M.D. ("Wolfson Mem.").) In the alternative, defendants NYDH and Wolfson move for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that there are no material issues of fact regarding the sufficiency of plaintiff's claims against them. (*Id* .) In response, plaintiff points to *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), to support his argument that because Wolfson agreed with the state to treat inmates, he should be treated as acting under color of state law. (ECF No. 63 at 5.) The court grants the non-federal defendants' motion for summary judgment as to the § 1983 claims.

In order to succeed on a § 1983 claim, a plaintiff must show that the defendants, acting under the color of state law, deprived him of a constitutional right. *Esposito v. New York,* 355 Fed. App'x 511, 512 (2d Cir.2009). A *Bivens* action allows a plaintiff to hold a federal officer liable for constitutional violations. *Holland v. Pinkerton Sec.,* 68 F.Supp.2d 282, 283 (S.D.N.Y.1999). *Bivens* actions do not,

however, "provide for broad recovery from any person or entity alleged to have violated a plaintiff's rights under the Constitution or federal laws; recovery is permitted only from individual federal officials." *Id.*

A private hospital is not considered a state or federal actor. *White v. St. Joseph's Hosp.,* 369 Fed. App'x 225, 226 (2d Cir.2010) ("[P]rivate actors and institutions, such as ... hospitals ... are generally not proper § 1983 defendants because they do not act under color of state law."); *Sockwell v. Bernstein,* No. 07–CV–00866, 2007 WL 879582 at \*2 (E.D.N.Y Mar. 21, 2007) (holding that a private hospital cannot be sued under § 1983 or *Bivens* ).

Here, it is undisputed that NYDH is "a private medical institution doing business as a private not-for-profit corporation." (N.Y.DH R. 56.1 Stmt. at ¶ 1.) Accordingly, NYDH's motion for summary judgment on the § 1983 and *Bivens* claims is granted.

Nor is Dr. Wolfson a state or federal actor. In *West,* the court found that a private physician, under contract with the state to provide medical services to state inmates, was liable under § 1983. 487 U.S. at 54. The court held that the dispositive issue is "the relationship among the State, the physician, and the prisoner," *West,* 487 U.S. at 56, and considered relevant that the physician had a contract with the prison, the physician operated a twice-weekly clinic at the prison, and the physician performed the operation on the plaintiff at the prison medical facility. *West,* 487 U.S. at 55. By contrast, here plaintiff has not submitted similar evidence creating an issue of fact regarding the relationship between Dr. Wolfson and the Bureau of Prisons. Indeed, Dr. Wolfson affirms that he does not have a contract with the federal government or any federal agency or institution. (ECF No. 82, Wolfson Aff., at ¶ 5.) Rather, he treats federal prisons as part of his private practice when the Bureau of Prisons makes appointments with his office. (*Id.*) Further, it is undisputed that Dr. Wolfson treated plaintiff only in his office in New York Downtown Hospital and never at the prison itself. (*See generally* Wolfson R. 56.1 Stmt.) Dr. Wolfson provided plaintiff with Local Civil Rule 56.1 and 56.2 statements informing him that his claims would be dismissed unless he submitted a counter-statement with supporting affidavits or declarations (*see* ECF No. 84, Notice to Pro Se Litigant Opposing Motion to Dismiss Pursuant to Local Rules 12.1Rules 12.1 and 56.2), but plaintiff did not

submit a counter-statement or otherwise raise a material issue of fact requiring a trial on the issue of Dr. Wolfson's status as a non-government actor. Accordingly, because defendant Wolfson is neither a state nor federal actor, his motion for summary judgment as to the 🚩 § 1983 and *Bivens* claims is granted.

### VI. *Plaintiff's Claims for Negligence and Malpractice*

#### A. Claims Against the Federal Defendants

**\*11**  Plaintiff also alleges negligence and/or malpractice claims against both the federal and the non-federal defendants. (*See* ECF No. 45, Amend. Compl., at ¶ 2(D) ("[A]n error was made at my first surgery.... Dr. Wolfson's malpractice has left an indelible sense of fear and uncertainty in my life."); *id.* at ¶ V (plaintiff requests relief including liability for "malpractice and negligence").) Plaintiff appears to allege that the defendants were negligent in (1) delaying treatment prior to the first surgery; (2) performing the first surgery in a negligent manner; and (3) failing to monitor his recovery from that surgery. (*See generally id.*) For the reasons stated below, plaintiff's tort claims against the federal defendants are dismissed and plaintiff's state law negligence and malpractice claims against the non-federal defendants may proceed.

To the extent that plaintiff's amended complaint is construed as alleging negligence and malpractice claims against the federal defendants, and as Judge Bloom noted during the June 3, 2009 telephone conference, those claims are governed by the FTCA, 🚩 28 U.S.C. §§ 1346(b); 2671 *et seq.* (*See* ECF No. 22, Tr. at 7.) The FTCA governs claims for money damages for injury "caused by the negligent or wrongful act or omission of employee of the Government while acting within the scope his office or employment." 🚩 28 U.S.C. § 1346(b)(1). Under the FTCA, the plaintiff's exclusive remedy is an action against the United States, and not against a federal agency or one of its employees. *Id.* § 2679(b)(1) (providing that "[t]he remedy against the United States provided by 🚩 section[ ] 1346(b) ... of this title for ... personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim ...."); *see also* 🚩 *C.P. Chem. Co. v. United States,* 810 F.2d 34, 37 n. 1 (2d Cir.1987)

("The FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself.").

Further, the FTCA provides a two-year statute of limitations for presenting an administrative claim against the United States. 28 U.S.C. § 2401(b) ("[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). Plaintiff does not allege that he filed an administrative tort claim within two years of the accrual of this claim, as required by 🚩 28 U.S.C §§ 1346(b), 2401(b), 2675. Ordinarily, an FTCA claim accrues on the date of a plaintiff's injury, "although in certain instances, particularly in medical malpractice cases, accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Tourchin v. United States,* No. 07–3458–cv, 2009 U.S.App. LEXIS 234, at \*2 (2d Cir. Jan. 8, 2009) (citing 🚩 *Barrett v. United States,* 689 F.2d 324, 327 (2d Cir.1982)).

**\*12**  Here, plaintiff alleges tort claims against both the federal prison facility, the MDC, and Dr. Beaudouin, a federal prison doctor. All of these claims are construed as "claim[s] against the United States" and are governed by the FTCA. *See, e.g., McDowall v. Metro. Corr. Ctr.,* No. 08–Civ–8329, 2010 U.S. Dist. LEXIS 15469, at \*8–10, 2010 WL 649744 (S.D.N.Y. Feb. 22, 2010) (construing as claims against the United States claims against named defendants Metropolitan Correctional Center ("MCC") and the warden of MCC). Plaintiff's exclusive remedy for damages for personal injury arising from the negligent act or omission of any employee of the United States is under the FTCA. 28 U.S.C. § 2679(b)(1).

Plaintiff's claims arose in connection with the alleged lack of treatment prior to and in between the surgeries he underwent in November 2006. Even assuming that plaintiff was not aware that an alleged act or omission of a federal employee occurred as of the date of his November 3 surgery, at the latest, he knew of his injury by the date he was readmitted to NYDH, November 13, 2006, by which time plaintiff had learned of his allegedly delayed diagnosis of bladder cancer and had allegedly suffered post-surgical pain at the MDC. (ECF No. 82, Wolfson Aff., at ¶ 7; Fridel Decl., Ex. L, at B000000041.) Therefore, his claims accrued at the latest on November 13, 2006. He did not file an administrative claim prior to commencing this suit on December 12, 2008, as required by 🚩 28 U.S.C §§ 1346(b); 2675. More than two

years have elapsed since his claims accrued and the time for filing an administrative claim expired a month before he commenced this action. Accordingly, plaintiff's FTCA claims against the federal defendants are untimely and the court lacks subject matter jurisdiction over plaintiff's negligence claims. *See, e.g., Johnson v. Smithsonian Inst.,* 189 F.3d 180, 189 (2d Cir.1999) ("Unless a plaintiff complies with [the] requirement [to file an administrative claim], a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim."); *Czetwertynski v. United States,* 514 F.Supp.2d 592, 596 (S.D.N.Y.2007) ("Because plaintiff has not exhausted his administrative remedies, this court lacks subject matter jurisdiction over all of plaintiff's claims.").

### B. Negligence Claims Against the Non–Federal Defendants

Plaintiff also alleges negligence and medical malpractice claims against the non-federal defendants. In response, the non-federal defendants argue that plaintiff has not alleged any medical malpractice claims, and even if he had, he has not presented any evidence to support those claims. (ECF No. 75, NYDH Mem., at 5.)

"A claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.' " *Sha v. Memorial Sloan–Kettering Cancer Ctr.,* No. 99 Civ. 3233, 2000 U.S. Dist. LEXIS 17297, at *2, 2000 WL 1760883 (S.D.N.Y. Nov. 29, 2000) (citing *Weiner v. Lenox Hill Hospital,* 88 N.Y.2d 784, 650 N.Y.S.2d 629, 631, 673 N.E.2d 914 (1996)).

 *13 Claims for negligence and medical malpractice arise under state law, and a federal court generally will not have original jurisdiction over the claims unless complete diversity exists. Diversity is complete only where no plaintiff and no defendant are citizens of the same state. *Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). For purposes of diversity jurisdiction, a prisoner's domicile is determined by his pre-incarceration domicile and does not change if the prisoner is transferred to a facility outside of that state. *Fermin v. Moriarty,* No. 96 Civ. 3022, 2003 U.S. Dist. LEXIS 13367, at *6, 2003 WL 21787351 (S.D.N.Y. Aug. 1, 2003) ("It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile. Instead, the prisoner retains his pre-incarceration domicile.").

Where there is federal question jurisdiction in an action that also alleges claims under state law, district courts have discretion to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §§ 1367(a). In determining whether to exercise supplemental jurisdiction, courts must balance the "traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to extend jurisdiction." *Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

Here, plaintiff's tort claims for medical malpractice against the non-federal defendants arise under New York state law. *See, e.g., Obunugafor v. Borchert,* No. 01 Civ. 3125, 2001 U.S. Dist. LEXIS 16884, at *5, 2001 WL 1255929 (S.D.N.Y. Oct. 19, 2001) (holding that plaintiff's claims for medical neglect and failure to diagnose amounted to a claim of negligence or malpractice under state law and did not raise a federal question. Furthermore, because all of the parties are citizens of New York, there is no diversity jurisdiction. The fact that plaintiff now resides in a correctional facility in North Carolina, (ECF No. 99, Notice of Change of Address), is of no consequence because plaintiff's pre-incarceration domicile, at the time of the events giving rise to this action, was New York and he is therefore deemed a citizen of New York. *Fermin,* 2003 U.S. Dist. LEXIS 13367, at *6, 2003 WL 21787351. However, because plaintiff's state law claims are related to and, in part, form a common nucleus of operative fact with, plaintiff's federal claims, the court will retain jurisdiction over the state claims so long as the federal *Bivens* claims proceed in this action. 28 U.S.C. § 1367(a).

Furthermore, although the non-federal defendants argue that any references in plaintiff's complaint to medical malpractice are "irrelevant since plaintiff did not commence a medical malpractice claim," (ECF No. 75, NYDH Mem., at 5), they also submit an expert declaration from Dr. Jonathan M. Vapnek addressing the substance of plaintiff's malpractice claim. (ECF No. 76, Declaration of Jonathan M. Vapnek, M.D., dated January 19, 2010.) The plaintiff clearly pleads medical malpractice in his amended complaint. (ECF No. 45, Amend. Compl., at ¶ 2(D) ("Dr. Wolfson ... confirmed that an error was made at my first surgery.").) The non-

federal defendants have incorrectly interpreted Judge Bloom's comments at the June 3, 2009 conference regarding the FTCA statute of limitations as barring plaintiff's state law tort claims not only as against the federal defendants, but also as against the non-federal defendants. (*See generally* ECF No. 50, Letter to the Court, dated November 25, 2009 .) The FTCA does not preclude plaintiff's tort claims for medical malpractice and negligence against the non-federal defendants. However, plaintiff, proceeding *pro se,* may have reasonably understood Judge Bloom's comments at the June 3, 2009 conference as barring his tort claims against the non-federal defendants and declined to submit evidence to support his claims on that basis.

 **\*14** The court finds that plaintiff should have an opportunity to present evidence to refute Dr. Vapnek's medical conclusions. The court denies the non-federal defendants' motion for summary judgment on the state tort claims without prejudice. The parties are directed to schedule a conference with Magistrate Judge Bloom to revisit the issue of whether *pro bono* counsel can be appointed to assist plaintiff with retaining a medical expert to support his claim of medical malpractice against the non-federal defendants, and to address whether the delay in treating plaintiff's bladder cancer and the

pain he suffered at the MDC rise to a level that establishes an Eighth Amendment violation against Dr. Beaudouin.

## CONCLUSION

For the foregoing reasons: (1) plaintiff's constitutional claims against NYDH and Wolfson are dismissed; (2) plaintiff's FTCA claims against MDC and Beaudouin are dismissed; and (3) plaintiff's constitutional claims against Beaudouin and plaintiff's state law tort claims against NYDH and Wolfson shall proceed. The parties are ordered to schedule a conference with Magistrate Judge Bloom to discuss whether *pro bono* counsel can be appointed to represent plaintiff on the remaining claims. The United States Attorney's Office is ordered to serve a copy of this Memorandum and Order on the plaintiff and file a declaration of service by December 7, 2010. The parties are directed to submit a joint status letter via ECF as to how they intend to proceed by December 20, 2010.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5057208

---

## Footnotes

1       Unless otherwise indicated, references herein are to the amended complaint, filed on November 2, 2009. (ECF No. 45, Amend. Compl.)

2       As set forth in Local Civil Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L. Civ. R. 56.1(c). In addition, Local Civil Rule 56.2 requires that notice be sent to *pro se* parties by the party moving for summary judgment. Here, defendants complied with Rules 56.1 and 56.2 by serving statements and notice on plaintiff. Plaintiff did not submit a correspondingly numbered document responding to defendants' 56.1 statements. Although the statements in defendants' Rule 56.1 statements are technically deemed admitted for the purposes of this motion, the court has liberally construed plaintiff's opposition papers and the evidence in the record and finds that several issues of disputed material fact remain.

3       Exhibit L is not filed on ECF, presumably because it contains medical records pertaining to plaintiff's medical treatment by the BOP.

---

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                                        10

2018 WL 2390143
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Wilbert WILSON, Roland Woods,
Ta'kyashilah Sabree, and E.J., Plaintiffs,
v.
NEIGHBORHOOD RESTORE DEVELOPMENT
and Northeast Brooklyn, Defendants.

18-CV-1172 (MKB)
|
Signed 05/18/2018

**Attorneys and Law Firms**

Wilbert Wilson, Brooklyn, NY, pro se.

Roland Woods, Brooklyn, NY, pro se.

Ta'kyashilah Sabree, Brooklyn, NY, pro se.

E.J., Brooklyn, NY, pro se.

Max Rayetsky, Goldstein Hall, PLLC, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

**\*1** Plaintiffs Wilbert Wilson, Roland Woods, Ta'kyashilah Sabree and E.J., proceeding *pro se*,[1] commenced the above-captioned action on February 22, 2018 against Defendants Neighborhood Restore Development and Northeast Brooklyn, alleging breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud. (Compl. 2, Docket Entry No. 1.) For the reasons set forth below, the Court dismisses the Complaint.

## I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. Plaintiffs allege Defendants unlawfully obtained possession of real property located at 580 Lafayette Avenue in Brooklyn, New York, which appears to be Plaintiffs' residence, through a fraudulent tax lien foreclosure. (*Id.* at

1, 3.) Plaintiffs assert that Defendant Neighborhood Restore, a nonprofit organization "organized by the Department of Finance to be a [l]ien [s]ale [h]older," "was specifically unaware that the plaintiff[ ] Wilbert Wilson had obtained a [r]everse [m]ortgage and was approved [and] ready to pay off the taxes owed to the City of New York" and that Plaintiffs "had requested and received a Temporary Exemption Tax Lien due to property renovation."[2] (*Id.* at 3). In addition, Plaintiffs allege that "[w]hen the City of New York [t]ransferred the [l]ien [s]ale," to Neighborhood Restore, it did not "transfer[ ] the [d]eed," but Neighborhood Restore nonetheless "[f]raudulently deleted" Plaintiff Wilbert Wilson from the deed, and added Neighborhood Restore. (*Id.*) Plaintiffs further allege that Neighborhood Restore's actions "[c]aused the [d]eath of three (3) members of the family," but do not explain how the deaths occurred or provide any other relevant information. (*Id.*) Plaintiffs seek money damages in the amount of $50 million. (*Id.*)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) ); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Case 3:23-cv-01107-DNH-ML    Document 5    Filed 09/29/23    Page 33 of 101

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

**\*2** Nevertheless, if the court "determines at any time that it lacks subject-matter jurisdiction, the [c]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (holding that a district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ) ).

### b. Plaintiffs may not bring suit on behalf of E.J.

It is well-settled that a lay person cannot represent another individual—not even his or her own child. Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see* Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own child."). When it is apparent to the court that a *pro se* plaintiff is suing on behalf of a minor, the Court has a duty to protect the child by enforcing, *sua sponte*, this prohibition against unauthorized representation. Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998). In this case, E.J., a named Plaintiff in this action, appears to be a minor. (*See* Compl. 5.) Because the other Plaintiffs are not attorneys, they cannot bring suit on behalf of E.J. Therefore, the Court dismisses without prejudice all claims filed on behalf of E.J.

### c. The Court lacks subject matter jurisdiction over Plaintiffs' claims

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

United States." Bounds v. Pine Belt Mental Health Care Res., 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also* Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 48 (2d Cir. 2012).

For a federal court to exercise subject matter jurisdiction based on diversity, there must be complete diversity of citizenship between all plaintiffs and all defendants. Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants."); Lovejoy v. Watson, 475 Fed.Appx. 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction."). For purposes of diversity of citizenship, a corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1); *see* Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010) (holding that " 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also* Bayerische Landesbank, 692 F.3d at 48.

**\*3** Construing Plaintiffs' allegations to "raise the strongest arguments they suggest," McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ), the Complaint does not suggest any basis for subject matter jurisdiction. There is no federal question jurisdiction because Plaintiffs' claims do not arise under the Constitution or any federal laws. See 28 U.S.C. § 1331. Instead, Plaintiffs allege claims for breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud, (Compl. 2), all of which are state law claims, see JP Morgan Chase Bank, N.A. v. Hunter Grp., Inc., No. 10-CV-00917, 2010 WL 5313547, at \*3 (E.D.N.Y. Dec. 20, 2010) (contract claims governed by state law); Silver v. Campbell, No. 16-

Case 3:23-cv-01107-DNH-ML    Document 5    Filed 09/29/23    Page 34 of 101

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

CV-0911, 2017 WL 4011259, at *6 (N.D.N.Y. Sept. 11, 2017) (dismissing state law warranty of habitability claim for lack of diversity jurisdiction); *White v. Ercole*, No. 06-CV-1136, 2009 WL 602890, at *5 (S.D.N.Y. Mar. 3, 2009) (negligence claim a matter of state law); *West v. Sanchez*, No. 17-CV-2482, 2017 WL 1628887, at *2 (E.D.N.Y. May 1, 2017) (no federal question jurisdiction on what "amount[s] to a state-law personal injury claim" (citations omitted) );

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 182 (2d Cir. 2015) (elements of common-law fraud governed by state law).

In addition, Plaintiffs do not invoke the Court's diversity jurisdiction, and, in any event, the addresses provided by Plaintiffs suggest a lack of complete diversity between the parties. (Compl. 2 (listing New York addresses for Defendants Neighborhood Restore Development, Northeast Brooklyn and Plaintiff Wilbert Wilson).) Therefore, there is no diversity of citizenship that would confer diversity jurisdiction. *See Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 325 (2d Cir. 2001) (holding that federal diversity statute mandates complete diversity).

Because the Complaint does not give rise to federal question or diversity jurisdiction, the Court dismisses the Complaint for lack of subject matter jurisdiction. *Fed. R. Civ. P. 12(h)(3)*; *Ruhrgas*, 526 U.S. at 583. However, in light of Plaintiffs' *pro se* status, the Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of this Memorandum and Order, in order to plead facts supporting subject matter jurisdiction. In addition, to the extent Plaintiffs seek to bring claims on behalf of E.J., Plaintiffs must retain counsel to assert such claims.

Plaintiffs are advised that the amended complaint will completely replace the original complaint, must be captioned, "Amended Complaint," and must bear the same docket number as this Order.

In order to invoke the Court's diversity jurisdiction, Plaintiffs must establish complete diversity of citizenship (meaning that no Defendant can be a citizen of the same State as each Plaintiff) and must set forth the amount in controversy in the amended complaint. *See, e.g., Pearson v. Reid-Robinson*, 632 Fed.Appx. 19, 19 (2d Cir. 2016) (holding that courts should

allow "plaintiffs to amend complaints to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship" (internal quotation marks omitted) (citing

*Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987) ) ).

If Plaintiffs intend to invoke the Court's federal question jurisdiction, Plaintiffs must set forth sufficient factual content to allow the Court "to draw the reasonable inference" that each defendant named in the amended complaint is liable for the misconduct or harm caused to each Plaintiff named in the amended complaint, *Iqbal*, 556 U.S. at 678; *Fed. R. Civ. P. 8*, and that such conduct is in violation of a federal constitutional or statutory right.

**\*4** All further proceedings shall be stayed for thirty (30) days. If Plaintiffs fail to file an amended complaint which establishes the Court's jurisdiction over this matter within the time allowed, the Court will dismiss the Complaint without prejudice for lack of subject matter jurisdiction. *Fed. R. Civ. P. 12(h)(3)*.

### III. Conclusion

For the foregoing reasons, the Court dismisses without prejudice all claims brought on behalf of E.J., *Cheung*, 906 F.2d at 61, and dismisses the entire Complaint without prejudice for lack of subject matter jurisdiction, *see Fed. R. Civ. P. 12(h)(3)*. The Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order. No summons shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.

Although Plaintiffs paid the filing fee, the Court certifies pursuant to *28 U.S.C. § 1915(a)(3)* that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 2390143

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 35 of 101

**Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)**

**Footnotes**

1       Although the Complaint contains a sentence suggesting that Plaintiffs are represented by counsel, (*see*
        Compl. 3) ("The Plaintiff and his attorney are seeking to consider negotiation with the Defendants...."), no
        attorney has appeared in this action on Plaintiffs' behalf.

2       The Complaint does not provide information regarding the second named Defendant, Northeast Brooklyn.

---

**End of Document**                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 302648
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Kenric LEVER, Plaintiff,
v.
Christina LYONS and Lescele Bogle, Defendants.

16-CV-5130 (MKB) (SJB)
|
Signed 01/27/2021
|
Filed 01/28/2021

**Attorneys and Law Firms**

Kenric Lever, Brooklyn, NY, pro se.

Christina Lyons, Orange, NJ, pro se.

Lescele Bogle, Eastampton, NJ, pro se.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

 **\*1** Plaintiff Kenric Lever, proceeding *pro se*, commenced the above-captioned action on September 15, 2016, against Defendants Christina Lyons and Lescele Bogle, also proceeding *pro se*. (Compl., Docket Entry No. 1.) In a prior Memorandum and Order, the Court found that complete diversity did not exist between Plaintiff and Lyons and dismissed the action for lack of subject matter jurisdiction but granted Plaintiff leave to amend.[1] Plaintiff filed an Amended Complaint on June 21, 2018, asserting claims of false imprisonment, intentional infliction of emotional distress, and defamation. (Am. Compl., Docket Entry No. 51.) The Court referred the matter to Magistrate Judge Sanket J. Bulsara for a report and recommendation regarding the Court's subject matter jurisdiction. (*See* Order dated Oct. 23, 2018.)

After evidentiary hearings on March 21 and April 3, 2019,[2] Judge Bulsara filed a report and recommendation on September 12, 2019 (the "R&R"), recommending that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction because both Plaintiff and Lyons were domiciled in New York. (R&R, Docket Entry No. 73.) On October 29, 2019, Plaintiff filed objections to the R&R. (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 75.)

For the reasons explained below, the Court adopts the R&R and dismisses the Amended Complaint without prejudice for lack of subject matter jurisdiction.

**I. Background**

**a. Procedural background**

After Plaintiff filed his Complaint on September 15, 2016, Defendants moved to dismiss it on August 9, 2017, for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively, and for sanctions against Plaintiff. (*See* Letter Mot. to Dismiss by Lescele Bogle, Docket Entry No. 26; Letter Mot. to Dismiss by Christina Lyons, Docket Entry No. 27.) On August 25, 2017, the Court referred the motions to Magistrate Judge Cheryl L. Pollak for a report and recommendation. (*See* Order dated Aug. 25, 2017.)

By report and recommendation dated January 2, 2018, Judge Bulsara[3] recommended that the Court dismiss the Complaint without prejudice for lack of subject matter jurisdiction and deny Defendants' requests for sanctions.[4] (R&R dated Jan. 2, 2018 ("2018 R&R"), at 21, Docket Entry No. 37.) On February 26, 2018, the Court adopted the 2018 R&R in its entirety over Plaintiff's objections. (Mem. and Order dated Feb. 26, 2018, Docket Entry No. 45.)

 **\*2** On June 21, 2018, Plaintiff filed an Amended Complaint, (Am. Compl.),[5] and Defendants filed Answers, (Lyons Answer, Docket Entry No. 53; Bogle Answer, Docket Entry No. 54.) After evidentiary hearings on the question of subject matter jurisdiction on March 21 and April 3, 2019, (*see* Lever Tr.; Lyons Tr.), by report and recommendation dated September 12, 2019, Judge Bulsara determined that both Plaintiff and Lyons were domiciled in New York when the Complaint was filed and therefore the parties are not completely diverse. (R&R 16.) Judge Bulsara therefore recommended that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction. (*Id.* at 17.) Plaintiff timely filed objections to the R&R. (Pl.'s Obj.)

**b. Factual background**

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of deciding

Defendants' motions and assumes the parties' familiarity with the facts set forth in the prior opinions. *See Lever v. Lyons, No. 16-CV-5130, 2018 WL 1521857, at \*1 (E.D.N.Y. Jan. 2, 2018), report and recommendation adopted, 2018 WL 1089328 (Feb. 26, 2018).* The Court provides only a summary of the relevant facts.

### i. September 2015 police report and court appearances

Plaintiff alleges that on September 8, 2015, Lyons made a false report to Newark, New Jersey, police officers "that [Plaintiff] had threatened to harm her and had posted a story on social media [about] her." [6] (Am. Compl. 4.) The report caused an order of protection to be entered against Plaintiff and led to him standing trial for making terroristic threats on September 14, 2015, in Essex County, New Jersey Superior Court (the "Essex County proceeding"). (*Id.*) At that court appearance, Lyons "produce[d] pictures of her beat up with bruises and a black eye and scratches." (*Id.*) She also submitted those photographs in a proceeding in Kings County Family Court. (*Id.*) Plaintiff contends that text messages between Lyons and Bogle revealed that they had colluded to cause those injuries and blame Plaintiff. (*Id.*) At the Essex County proceeding, Lyons caused Plaintiff to be served with a complaint that "intentionally defamed" him by stating that he had been abusing Lyons for years. (*Id.* at 5.) Lyons obtained an order of protection that prevented Plaintiff from obtaining work as a collection agent with New York City Transit in April of 2016 because he was ineligible to obtain a handgun license. (*Id.*)

Plaintiff further alleges that on July 17, 2016, Lyons made a false report to the 78th Precinct in Brooklyn, New York, that Plaintiff was molesting his child and watching child pornography. (*Id.* at 3.) Lyons' report caused Plaintiff emotional distress and caused him to be imprisoned in a locked room for several hours. (*Id.*) On the same day, Lyons "defamed [Plaintiff] by making false statements to the Superior Court of New Jersey, stating [Plaintiff] was under [f]ederal [i]nvestigation," and submitted to the court pictures of child pornography, which Lyons stated were obtained from Plaintiff's computer. (*Id.* at 4.) Lyons "went to the state of New Jersey and made the same complaint" on July 18, 2016, causing Plaintiff to lose custody of his child. (*Id.* at 3.) Plaintiff contends that on August 31, 2016, the Attorney General of Essex County submitted a report to the New Jersey state court concluding that the child pornography submitted by Lyons came from Lyons' friend, not Plaintiff's computer.

(*Id.* at 4.) In addition, Lyons posted "on social media" on an unstated date that Plaintiff had abused her and that she had won a domestic violence case against him. (*Id.* at 5.) Plaintiff alleges that these statements are intentionally false and defamatory. (*Id.*)

### ii. Plaintiff's allegations concerning Lyons' domicile

**\*3** Plaintiff alleges that Lyons was domiciled in New Jersey when the Complaint was filed and argues that the Court therefore has subject matter jurisdiction. [7] (Am. Compl. 2–3; Deed to 121 Ward Street, Orange, New Jersey 07050 granted to Shawn Landrum, [8] at 8–13, annexed to Am. Compl. as Ex. A, Docket Entry No. 51.) In support, Plaintiff alleges that Lyons has misrepresented her address in prior court appearances because property records reflect that her purported address — 119 Ward Street, Orange, New Jersey, 07050 — does not exist, and is instead "a dual property of 121 [W]ard Street." (Am. Compl. 2.) Plaintiff contends that Lyons testified on August 27, 2014, in Kings County Family Court "that she abandon[ed] New York as her domicile and made the state of New Jersey her new home," and also testified on July 1, 2016, before that same court that she and her child reside in New Jersey. [9] (*Id.*) In addition, Plaintiff contends that Lyons gave her address as 119 Ward Street in each instance. (*Id.*) Plaintiff also asserts that Lyons' attorney stated in a December 6, 2016 hearing in Kings County family court that Lyons lives in New Jersey and requested that proceedings be transferred there. [10] (*Id.*)

In further support of his argument that Lyons is a New Jersey domiciliary, Plaintiff relies on the addresses on Lyons' bank and cable television accounts, tax filings in which Lyons "claim[ed] that she d[id] not maintain any living quarters in New York," and copies of pay stubs with an Orange, New Jersey, address that were certified by the Kings County court. [11] Finally, Plaintiff notes that police officers in Orange, New Jersey, responded to a report at Plaintiff's New Jersey address on August 16, 2016, and found her at home. [12]

### iii. Hearing testimony

Judge Bulsara heard testimony from Plaintiff and Lyons on the issue of Lyons' domicile. Plaintiff testified that he believes that Lyons is a citizen of New Jersey because of (1) statements

she made in other court proceedings, transcripts of which he has submitted to the Court; (2) her New York driver's license being issued to a United Parcel Service mailbox address where she had never lived; (3) Lyons' inconsistent statements about where she lived; (4) her January 19, 2013 voter registration in New Jersey; [13] and (5) a lawsuit filed against her in New Jersey by her landlord on July 20, 2018. (*Id.* at 10–11, 17–36.) Plaintiff testified that Lyons first lived in Staten Island, then lived with Plaintiff in Brooklyn. He also testified that in May of 2009, while living with Lyons in Brooklyn, Plaintiff obtained an apartment in Jersey City to ease her commute, (Lever Tr. 5:5–6:13), stopped living with Plaintiff around the end of June of 2009, and continued to live in Jersey City until approximately 2011. (*Id.* at 6:20–25.) Lyons then moved to Irvington, New Jersey, and a year later, to Orange, New Jersey. (*Id.* at 7:2–7.) Plaintiff also testified that he knew where Lyons lived because they shared custody of their daughter, who at the time of the hearing lived with Lyons' mother in Staten Island. (*Id.* at 7:10–8:7.) Between 2010 and 2016, Lyons' mother lived in Newark, New Jersey. (*Id.* at 9:3–25.)

**\*4** Lyons testified that, beginning at "the end of 2012" and ending approximately five years later, she resided at a Staten Island address and "would just go back and forth" between that address and her mother's residence at 119 Ward Street. (Lyons Tr. 4:13–5:1.) "[A]lmost a year" before the hearing, she moved from that Staten Island address to another New York address. [14] (*Id.* at 2:23–4:16.) She has possessed a New York driver's license ever since she "got [her] license ... [fifteen], almost [sixteen] years ago." (*Id.* at 5:4–13.) She never considered herself a resident of New Jersey, but used her mother's New Jersey address as her mailing address until 2018 because Plaintiff was and is "stalking [her]" and she did not feel comfortable disclosing her residence. (*Id.* at 5:14–6:8.) Lyons maintained her mother's apartment in 2016 and 2017 while her mother relocated to Virginia for work. (*Id.* at 7:4–12.) She has never voted in New Jersey, but voted in New York "just this past election" and in 2008, and did not vote anywhere during the intervening years. (*Id.* at 7:15–8:13.) Her car has been registered in her name in New York since 2008 and prior to 2008 was registered in her mother's name. (*Id.* at 8:14–23.)

Judge Bulsara questioned why Lyons had provided a New Jersey address during court proceedings in New Jersey. (*Id.* at 9:6–8.) Lyons testified that custody proceedings had all occurred in New York, and that "[a]s far as any proceedings in New Jersey, that has been [child services]" proceedings

concerning her daughter, who attended school in New Jersey using Lyons' mother's address. (*Id.* at 9:9–10:24.) She further explained that the state was "already familiar with [her] daughter," and as a result, Lyons believed that "when it came to any dealings with the state," New Jersey was the better option. (*Id.* at 9:15–19.) Lyons also testified that in June of 2018, Plaintiff "filed court papers in New Jersey to take custody of [their] daughter," Lyons proved that she was a New York resident, and "the case was then relinquished over to New York." [15] (*Id.* at 11:12–20.)

After the hearings, the parties submitted additional evidence, including 2018 records from family court proceedings, (New Jersey Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67), which Judge Bulsara considered. Lyons told the Court about a similar lawsuit Plaintiff filed in New York state court. (Letter dated May 13, 2019, at 4, Docket Entry No. 71.) In response to an order from Judge Bulsara, (*see* Order dated June 3, 2019), Plaintiff assured the Court that he wanted to move forward with the federal case. (Letter dated June 24, 2019, Docket Entry No. 72.)

### c. The R&R

Judge Bulsara recommended that the Court dismiss the case for lack of diversity subject matter jurisdiction because Lyons and Plaintiff were domiciled in New York at the time Plaintiff filed the Complaint. (R&R.) As an initial matter, Judge Bulsara noted that Plaintiff had the burden of demonstrating complete diversity, and that "[m]uch of the evidence submitted — particularly from [Plaintiff] — is repetitive and duplicative of the evidence previously submitted," which had been insufficient then to establish diversity jurisdiction. (*Id.* at 2, 5, 10–11.) He found that because Lyons had once been a New York domiciliary, Plaintiff needed to show that Lyons intended to change her citizenship. (*Id.* at 6.)

In evaluating the testimony, Judge Bulsara noted that Lyons' ties to the 119 Ward Street address, which was her mother's home, were "beyond dispute" but "not dispositive of [her] citizenship." (*Id.* at 5–6.) He found the property ownership records for 121 Ward Street that were submitted by Plaintiff to be "of little use," and, if anything, undermined Plaintiff's case because he asserted Lyons' address did not exist, suggesting that there was no record of her owning property in New Jersey and "mak[ing] it less likely that Lyons ever intended

to reside there on a permanent basis." (*Id.* at 6.) As to the tax returns, credit card statements, and other documents all listing Lyons' address as 119 Ward Street, Judge Bulsara found them to be of "little consequence" because the Court had considered them in the prior report and recommendation and concluded that those documents "indicate[d] that the address is a temporary, periodic second residence of ... Lyons, not her primary residence or her domicile." (*Id.* at 7–9.) He further determined that the documents Plaintiff submitted after the evidentiary hearings, including filings from family court proceedings in 2018, were of "little value" because they postdated the filing of the Complaint and were "filled with contradictory evidence, much of which is repetitive of facts previously submitted or is of little to no assistance in establishing the parties' respective domiciles." (*Id.* at 9–10.) He determined that some of the documents Plaintiff provided supported the conclusion that Lyons had ties to New York: she had registered to vote in 2017 with a New York address, has a New York driver's license, and had sought medical care for her daughter in Staten Island in 2016 and 2017. (*Id.* at 10 n.5.)

**\*5** Judge Bulsara determined that discussions of residence in state court proceedings involving Plaintiff and Lyons mainly concerned their daughter's residence, which was in New Jersey. (*Id.* at 7.) Judge Bulsara found that the child's residence was less probative of Lyons' domicile than a child's residence would usually be because the child lived with her grandmother in New Jersey, was born in New York, and sometimes lived with her mother in New York. (*Id.* at 6–7.) In addition, filings from the 2018 proceedings in family court postdated the filing of this Complaint and were repetitive or otherwise unhelpful. (*Id.* at 9.) Judge Bulsara credited Lyons' testimony that she did not intend to move permanently to New Jersey and that her ties to that state "were all based on residing with her mother." (*Id.* at 14–16.) Lyons' mother no longer lived in New Jersey, and Lyons no longer maintains ties to the state, suggesting that she did not intend to permanently change her domicile in 2016. (*Id.* at 15–16.) Given this evidence, Judge Bulsara concluded that Plaintiff had not met his burden of showing that Lyons changed her domicile from New York to New Jersey. (*Id.* at 11, 17.)

Judge Bulsara explained that the Court lacked subject matter jurisdiction over the entire action, because a defect in diversity (unlike a defect in amount in controversy) was an "action-specific" defect that required dismissal of the entire case. (*Id.* at 16–17 (citing *Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 921 F. Supp. 2d 158, 162 (S.D.N.Y. 2013)).) Therefore, the case could not proceed against Bogle, even

though she "does not dispute she is a citizen of New Jersey" and the damages sought against her satisfied the amount-in-controversy requirement. (*Id.* at 16.)

### d. Objections to the R&R

Plaintiff objects to the R&R,[16] arguing that: (1) Judge Bulsara erred in finding that the 119 Ward Street address was the home of Lyons' mother based only on Lyons' testimony and "without any documentation to prove this as fact"; (2) Lyons told the court on May 14, 2018, that she has no knowledge of her mother or her mother's landlords, who evicted her mother from 119 Ward Street in 2018; (3) Judge Bulsara erred in accepting Lyons' stated New York address as accurate when she had given a different, untruthful address on her driver's license; (4) Lyons bought a house in New Jersey in 2018 and has since used that address; (5) Lyons has been registered to vote in New Jersey since 2013 and pays taxes as a New York nonresident, and Lyons' pay stubs show two addresses, one of which is "falsified"; (6) Lyons told the Court that her address is confidential, but freely gave her New Jersey address in other court proceedings; (7) The New York Administration for Children's Services "found [Lyons] does not live nor reside part time at any location" in New York;[17] (8) Plaintiff is suing Lyons' mother, but the courts refuse to accept service at "the address"; and (9) in 2018, a court-appointed attorney for Plaintiff and Lyons' child stated that Lyons was "going state to state saying she lives in the other jurisdiction."[18] (Pl.'s Obj. 1–4.) Plaintiff requests a further hearing in which Lyons' mother and her landlords will testify as to Lyons' permanent address, and in which he will "get statements from [the New York address] where she claims to have lived." (*Id.* at 4.)

## II. Discussion

### a. Standard of review

**\*6** A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face

of the record. *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error when no objections to the magistrate judge's report and recommendation were filed). The clear error standard also applies when a party makes only conclusory or general objections. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under ...Fed. R. Civ. P. 72(b)." (quoting

🚩 *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

**b. Plaintiff has failed to show that in 2018 Lever was domiciled in New Jersey**

Plaintiff has not established by clear and convincing evidence that Lyons changed her domicile from New York to New Jersey. [19]

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. 🚩 *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 🚩 1332. Under the diversity jurisdiction statute, 🚩 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also* 🚩 *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,], all plaintiffs must be citizens of states diverse from those of all defendants.") (quoting 🚩 *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction.").

"For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (quoting 🚩 *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). "Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*, No. 16-CV-1395, 2017 WL 1157153, at *4 (S.D.N.Y. Mar. 25, 2017) (quoting *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009)); *see also Caren v. Collins*, 689 F. App'x 75, 75 (2d Cir. 2017) ("Although the individual plaintiff and the individual defendants are alleged to be residents of certain States, such an allegation is insufficient to plead citizenship."). Moreover, "one may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (quoting *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004)).

**\*7**  "One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs." 🚩 *Linardos*, 157 F.3d at 948 (quoting 🚩 *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). A person changes their domicile only when they take up residence in a new domicile and intend to stay. *Davis*, 691 F. App'x at 673. To determine whether an individual intends to stay in a particular state and effects a change in domicile, courts must look to the "totality of the evidence," considering, among other factors:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; ... payment of taxes; ... whether a person owns or rents his place of residence; the nature of the residence (*i.e.*, how permanent the living arrangement appears); ... and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 (alterations omitted) (quoting *Kennedy*, 633 F. Supp. 2d at

81). Whether a person intended to change his or her domicile from one state to another is a question of fact, and a "party alleging that there has been a change of domicile has the burden of proving the 'required intent ... to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.' "[20] *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (alterations omitted) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).

The parties agree that Lyons resided, at least temporarily, at 119 Ward Street in New Jersey and used that address to receive mail, but Lyons' residence at that address does not establish that she was domiciled in New Jersey. *See New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 ("Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." (quoting *Kennedy*, 633 F. Supp. 2d at 81)). Lyons' use of her mother's New Jersey address to receive mail, and her use of that address in court, does not contradict her testimony that at the time this lawsuit was filed, she divided her time between New Jersey and New York and did not intend to remain in New Jersey permanently. Similarly, her paying taxes as a New York nonresident does not establish that she intended to remain outside New York permanently, although (as Judge Bulsara recognized) it does provide some support for that conclusion. *See Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) ("[T]he determination of domicile considers factors such as voting, taxes, property, bank accounts, [and] places of business or employment." (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991))); *Braten v. Kaplan*, No. 07-CV-8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (noting that where a person pays taxes is one of "a number of factors" relevant to the determination of that person's domicile), *aff'd*, 406 F. App'x 516 (2d Cir. 2011).

**\*8** Moreover, Lyons' residence and actions in 2018, including her ties to a New Jersey address that Plaintiff describes in his objections, are not dispositive of where she was domiciled when the lawsuit was filed in 2016. *See Dukes ex rel. Dukes v. N.Y.C. Emps.' Ret. Sys.*, 581 F. App'x 81, 82 (2d Cir. 2017) (looking to domicile at the time the action was commenced); *Borderud v. Riverside Motorcars, LLC*, No. 18-CV-1291, 2020 WL 2494760, at *4 n.3 (D. Conn. May 13, 2020) ("Because diversity is determined at the time the [c]omplaint is filed, the [c]ourt will disregard evidence

concerning events after [the plaintiff] filed his [c]omplaint.") (citing *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019)); *Chappelle v. Beacon Commc'ns Corp.*, 863 F. Supp. 179, 182 n.3 (S.D.N.Y. 1994) ("Because the relevant period for determining [the defendant's] domicile is the time the action is commenced, which in this case is December [of] 1992, evidence which is probative of [the defendant's] domicile after that date is not discussed.").

Other factors support the conclusion that Lyons was domiciled in New York at the time Plaintiff commenced this action. Lyons kept her vehicle registered in New York, voted in New York when she voted (although she was also registered to vote in New Jersey in the years surrounding the filing of the Complaint), and kept a New York driver's license, even though the address on that license was in dispute. *See Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07-CV-3848, 2008 WL 926583, at *3 (S.D.N.Y. Apr. 2, 2008) (holding that factors supported the conclusion that the plaintiff was domiciled in New York and not Florida, including that "she was not registered to vote in Florida and had a New York driver's license and all her automobiles registered in New York"); *Kleiner v. Blum*, No. 03-CV-3846, 2003 WL 22241210, at *2 (S.D.N.Y. Sept. 30, 2003) (holding that, where the plaintiff intended to maintain residences in New York and his presumptive Georgia domicile in the long term, "that [the] plaintiff resides in New York, has adult children residing in New York, receives medical care in New York, receives his bills in New York, and maintains a pro bono office in New York[]merely show that, for the past three years, New York has been [the] plaintiff's principal place of residence" and did not establish New York as his domicile). In addition, Lyons lived with her mother rather than renting her own residence in New Jersey, and no evidence in the record suggests that Lyons planned to live there indefinitely to support her mother. *See Kennedy*, 633 F. Supp. 2d at 81 (holding "whether a person owns or rents his place of residence" is relevant to domicile); *cf. Dukes ex rel. Dukes v. NYCERS*, 2014 WL 583235, *2 (E.D.N.Y. Feb. 12, 2014) (holding that where plaintiff "expressed the intent to remain in Staten Island indefinitely to continue caring for her mother and working in New York City" that fact supported the conclusion she was domiciled in New York), *aff'd, Dukes ex rel. Dukes*, 581 F. App'x at 81. Given the conflicting evidence, Plaintiff has not succeeded in establishing that Lyons changed her domicile from New York, acquired at her birth, to New Jersey. *See Gold v. Katz*, No. 90-CV-7726, 1991 WL 237807, at *3 (S.D.N.Y. Nov. 4, 1991) ("There is a presumption favoring a former domicile over a newly

acquired residence." (first citing *Farrell v. Ashton*, No. 89-CV-6706, 1991 WL 29261, at *5 (S.D.N.Y. Feb. 28, 1991); and then citing 13B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3612, at 535 (1984))).

Finally, many of Plaintiff's objections are to Lyons' credibility. Judge Bulsara observed Plaintiff and Lyons at the evidentiary hearing and found Lyons' testimony — including that the 119 Ward Street address was primarily her mother's apartment — to be credible. (R&R 12, 14–15.) Plaintiff has not presented sufficient reason to set aside this credibility determination. *See* 🚩*Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." (quoting 🚩*Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999))); *Imbruce v. Buhl*, No. 15-CV-554, 2016 WL 2733097, at *2 (D. Conn. May 10, 2016) (evaluating

domicile "from the record and on the basis of the credible testimony of [witnesses] at the evidentiary hearing").

**\*9** Plaintiff has had a full opportunity to present evidence in support of his arguments that Lyons was domiciled in New Jersey at the commencement of this action and has failed to do so. The Court declines to grant Plaintiff further leave to amend the Complaint a second time.

### III. Conclusion

For the foregoing reasons, the Court adopts the R&R and dismisses the action without prejudice for lack of subject matter jurisdiction.

SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 302648

---

### Footnotes

1    *Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (E.D.N.Y. Feb. 26, 2018).

2    (*See* Tr. of Hr'g dated Mar. 21, 2019 ("Lever Tr."), Docket Entry No. 62; Tr. of Hr'g dated Apr. 3, 2019 ("Lyons Tr.") filed Apr. 5, 2019, Docket Entry No. 64.)

3    The case was reassigned to Judge Bulsara on September 5, 2017. (*See* Order dated Sept. 5, 2017.)

4    Judge Bulsara found that because Plaintiff and Lyons were domiciled in New York, the complete diversity necessary to support jurisdiction under 🚩28 U.S.C. § 1332 did not exist. (2018 R&R 17.) The Court adopted the 2018 R&R. (Mem. and Order, Docket Entry No. 45.)

5    The Amended Complaint alleges that Plaintiff is a citizen of New York and that Lyons and Bogle are both citizens of New Jersey. (Am. Compl. 1–2.) Plaintiff seeks $350,000 "from both [D]efendants" and punitive damages to be determined by the Court. (*Id.* at 5.)

6    Because the Amended Complaint and its attachments are not consecutively paginated, the Court refers to the ECF pagination.

7    He also alleges that Bogle is domiciled in New Jersey, (Am. Compl. 2), which is not disputed.

8    Shawn Landrum is one of the landlords of the property in Orange, New Jersey. (Lever Tr. 32.) Plaintiff asserts that Landrum "just made up" the 119 Ward Street address and that property records establish that the proper addresses for the property are 121A and 121B Ward Street. (*Id.* at 31–32.)

9    (Tr. of Hr'g dated Mar. 13, 2013, at 40–47, annexed to Am. Compl. as Ex. D, Docket Entry No. 51; Tr. of Hr'g dated Aug. 27, 2014, at 4, 36–37, annexed to Am. Compl. as Ex. E, Docket Entry No. 51-1; Tr. of Hr'g dated July 1, 2016, at 72, annexed to Am. Compl. as Ex. F, Docket Entry No. 51-1.)

10    In a December 6, 2016, hearing before the New York Supreme Court, Kings County, the court noted that a New Jersey court was also hearing a dispute between Plaintiff and Lyons "on the abuse docket" and that the parties' child resided in New Jersey. (Tr. of Hr'g dated Dec. 6, 2016, at 4–6, annexed to Am. Compl. as Ex. G, Docket Entry No. 51-2.) During a March 13, 2013 hearing in the same case, the parties discussed whether the custody exchange of Plaintiff's and Lyons' child, not the legal proceedings, should be moved from New York to New Jersey. (Tr. of Hr'g dated Mar. 13, 2013, at 41–47.)

11    (Am. Compl. 3; Bills from CreditOne Bank and DirecTV, at 10–11, annexed to Am. Compl. as Ex. H, Docket Entry No. 51-2; 2015 Federal and Nonresident and Part-Year Resident State Tax Returns of Lyons, at 13–34, annexed to Am. Compl. as Ex. I, Docket Entry No. 51-2; Paystubs of Christina Lyons for Pay Periods Ending Aug. 31, 2015, Mar. 31, 2016, Apr. 15, 2016, and June 30, 2016, at 36–40, annexed to Am. Compl. as Ex. J, Docket Entry No. 51-2.)

12    (Am. Compl. 3; Dep't of Children and Families Investigation Summ. 42–55, annexed to Am. Compl. as Ex. K, Docket Entry No. 51-2.)

13    Plaintiff noted that Lyons was registered to vote in two states, and Judge Bulsara suggested that "voter rolls are notoriously incorrect" because they are not updated when people move. (Lever Tr. 30:21–31:3.) Plaintiff added that "[w]hen [he] went down to the Board of Elections in New York, they told [him] that [Lyons] took her name off New York State voting and she just recently put it back on in June of last year." (*Id.* at 33:2–5.) Plaintiff submitted Lyons' voter registration records, which showed that she registered to vote in New York in 2008 and 2017 but registered in New Jersey in the interim and is still registered there. (New Jersey Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67; New York Voter Registration Records, at 88–91, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. I, Docket Entry No. 67.) There were no records of her having voted in New Jersey. (New Jersey Voter Records.)

14    Lyons provided both addresses to the Court but the information has been redacted from the public record. (Lyons Tr. 2:22–5:2.)

15    Lyons did not testify about the landlord's action against her in New Jersey or about her alleged use of a post office box as an address.

16    Plaintiff has submitted additional papers with his objections. Under Rule 72(b) of the Federal Rules of Civil Procedure, district courts have discretion to, among other things, "receive further evidence" in considering objections to a magistrate judge's recommended ruling. Fed. R. Civ. P. 72(b); *see also* Kazolias v. IBEW LU 363, 806 F.3d 45, 54 (2d Cir. 2015) ("[T]he governing statute ... expressly provides that the district court [in reviewing objections to an R&R] 'may also receive further evidence.' " (quoting 28 U.S.C. § 636(b)(1))). In light of Plaintiff's *pro se* status, the Court considers the evidence submitted with his objections, which appears to be largely duplicative of previous submissions. *See Augustin v. Cap. One*, No. 14-CV-179, 2015 WL 5664510, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) (considering additional evidence submitted with *pro se* plaintiff's objections to the magistrate judge's recommended ruling).

17    In a report produced by New York child welfare officials in November of 2018, investigators found that they could not ascertain Lyons' address because she lived in New Jersey and was uncooperative. (Nov. 1, 2018 Ct. Ordered Investigation 71, annexed to Pl.'s Obj. as Ex. O, Docket Entry No. 75.)

18    Plaintiff argues that Lyons contradicts herself by claiming that this Court lacks subject matter jurisdiction even as she brings counterclaims against Plaintiff in this Court. (Pl.'s Obj. 4.) Because subject matter jurisdiction is not waivable, Lyons did not waive defects in subject matter jurisdiction by asserting counterclaims in her answer. *See* ⚑ *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). In addition, based on Judge Bulsara's credibility determinations favoring Lyons, Plaintiff contends that "[t]he [C]ourt seem[s] to have taken a bias stand against [him]." (Pl.'s Obj. 1.) To the extent Plaintiff is making a "bias or partiality motion," the Court denies the application because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," ⚑ *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing ⚑ *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)), and the finding that Lyons' testimony was credible does not reflect the sort of "deep-seated favoritism or antagonism" that would justify an exception to that rule, *id.*

19    Plaintiff does not object to the R&R's findings that Lyons was domiciled in New York at birth and that the claims against Bogle cannot be severed from the rest of the action. The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts those recommendations pursuant to ⚑ 28 U.S.C. § 636(b)(1).

20    The Second Circuit has clarified that "the factual questions that inform a determination as to federal jurisdiction need not be submitted to a jury and may be resolved by the [c]ourt." ⚑ *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42–43 (2d Cir. 2000) (first citing ⚑ *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984); and then citing ⚑ *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                                    9

Case 3:23-cv-01107-DNH-ML Document 5 Filed 09/29/23 Page 45 of 101

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 46 of 101

Brown v. Peters, Not Reported in F.Supp. (1997)

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd*, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01107-DNH-ML    Document 5    Filed 09/29/23    Page 47 of 101

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 🚩42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 48 of 101

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 49 of 101

Brown v. Peters, Not Reported in F.Supp. (1997)

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 50 of 101

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1   I note, however, that the report-recommendation would survive even *de novo* review.

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of Minnesota and Olmested County Court Systeam, and State of Minnesota, Saint Peter State Hospital, Doctor Gammel Stephelton, et el Erickson, North West Bank and Trust, Olmested County Social Service, J.C. Penny Insurnce, Metmore Finicial, Traveler Insurnce, Comecial Union Insurnce, Hirman Insurnce, Amrican State Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi Insurnce, Steven Youngquist, Kent Chirstain, Micheal Benson, United Airline, Kowate Airline, Fordmotor Cridite, First Bank Rochester, George Restwich, British Airways, Western Union, Prudenial Insurnce, T.C.F. Bank, Judge Sandy Kieth, Judge Niergari, Olmestead County Judgering, Judge Mores, Judge Jacobson, Judge Challien, Judge Collin, Judge Thomase, Judge Buttler, Judge Morke, Judge Moweer, Sera Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn., St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel, for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon, Michael J. Holland, of counsel, for British Airways, P.L.C. and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths, of counsel, for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert J. Smith, of counsel, for Travelers Ins. Companies; Hirman Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas N. Kaufmann, of counsel, for American States Ins. Co. and Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F. Larkin, Asst. U. S. Atty., of counsel, for Michael Benson, Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F. Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY, George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte*

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 52 of 101

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy

easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995; and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 53 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions[4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction.[5]

**\*3**  Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 54 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

⚑ *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 55 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 🚩 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 🚩 28 U.S.C. § 1367(a).

🚩 Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*6 🚩 28 U.S.C. § 1391(a). 🚩 Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

🚩 *Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to

Case 3:23-cv-01107-DNH-ML Document 5 Filed 09/29/23 Page 56 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits."

*Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See* *Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She

also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil*

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 57 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

*v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (per curiam) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied.

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 58 of 101

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 59 of 101

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7       J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8       Former Supreme Court Justice Harry A. Blackmun.

9       We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16755840
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ako BURRELL, Plaintiff,
v.
Robert MACIOL, et al., Defendants.

9:19-CV-1629 (TJM/ATB)
|
Signed August 26, 2022

**Attorneys and Law Firms**

AKO BURRELL, Plaintiff pro se.

PATRICK M. CAREY, ESQ., for Defendants Trinity Food Service Group Inc. and Jennifer Sowers.

### REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** In the relevant portions of this amended civil rights complaint, plaintiff alleges Fourteenth Amendment due process violations, allegedly committed by defendants Trinity Food Service Group Incorporated ("Trinity") and Jennifer Sowers relating to plaintiff's diet at Oneida Correctional Facility ("OCF") between October of 2016 and October of 2017. (Amended Complaint ("AC")) (Dkt. No. 42). Presently before the court is a motion for summary judgment filed by these two defendants. (Dkt. Nos. 123, 145 (amended memorandum of law)). Plaintiff has filed a response in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 140, 150).

This summary judgment motion has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). For the following reasons, this court agrees with defendants and will recommend dismissal of the amended complaint as against both Trinity and Sowers.

### DISCUSSION

#### I. Procedural Background

Defendants Trinity and Sowers are the remaining two defendants in this action, initially brought by plaintiff in December of 2019 against eighteen defendants, raising a multitude of issues. (Dkt. No. 1). Plaintiff's amended complaint was filed on March 10, 2021. (Dkt. No. 42). On August 23, 2021, I recommended granting a motion for summary judgment filed by Robert Maciol, Robert Senkowski, and Gregory Pfliger ("the County defendants") based on a release of liability signed by plaintiff, after reaching a settlement in two previous actions filed in the Northern District of New York. [1] (Dkt. Nos. 50, 95). Senior Judge McAvoy adopted my report-recommendation on March 23, 2022. (Dkt. No. 131).

Claims against Correctional Medical Center ("CMC") were dismissed after this court recommended granting its motion to dismiss on January 6, 2022, which was adopted by Judge McAvoy on January 25, 2022. (Dkt. Nos. 119, 122). In my recommendation, I found that plaintiff stated no basis for liability on the merits against CMC, a private contractor providing medical care to the inmates at OCF. (Dkt. No. 119 at 9-12).

Plaintiff has filed a notice of appeal relating to the dismissal of the County defendants, arguing that the release he signed was not valid in itself, and in the alternative, the release did not apply to the instant action. (Dkt. Nos. 137, 138). The appeal is presently pending before the Second Circuit Court of Appeals. *Burrell v. Oneida County*, No. 22-686.

#### II. Jurisdiction

##### A. Legal Standards

Before this court may decide the remaining defendants' motion, I must determine whether I have jurisdiction to make such a decision. Generally, the filing of a notice of appeal divests the district court of jurisdiction over issues decided in the order that is being appealed. *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996). "The divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy [.]" *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). In *Rodgers*, the Second Circuit noted that "[w]e fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal." *101 F.3d at 251-52*. Thus, I must determine

whether the order dismissing only the County defendants was ripe for appeal. If the order was not appealable, this court is not divested of jurisdiction to consider the motion for summary judgment filed by the remaining defendants, Trinity and Sowers.

### B. Application

**\*2** Plaintiff filed a notice of appeal from Judge McAvoy's order dismissing the action against the County defendants based on a release signed by the plaintiff. However, Judge McAvoy did not enter a final judgment in favor of those defendants, and his order did not dispose of other defendants in the action, including the two remaining defendants, who subsequently filed the instant summary judgment motion, based, in part, on the same release. "[A]n order denying summary judgment or granting partial summary judgment cannot by itself form the basis of an appeal because it is nonfinal." *LaTrieste Rest. & Cabaret, Inc. v. Vill. of Port Chester*, 96 F.3d 598, 599-600 (2d Cir. 1996) (quoting *United States v. 228 Acres of Land & Dwelling*, 916 F.2d 808, 811 (2d Cir. 1990)). Because Judge McAvoy's order approving my report-recommendation did not dispose of the entire case, it was nonfinal, and not appealable under the general rule cited above.

However, this does not end the court's inquiry. An exception to this general rule is available under the "collateral order doctrine," which provides for appellate review if the court " 'finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' " *Weaver v. Brenner*, 40 F.3d 527, 533 (2d Cir. 1994) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

This doctrine has been applied in cases where summary judgment motions based on claims of qualified immunity were *denied*. *Johnson v. Jones*, 515 U.S. 304, 310-11(1995); *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985). The denial of summary judgment may be immediately appealable because "the very thing from which the defendant is immune–a trial–will, absent review, occur and cannot be remedied by a later appeal." *LaTrieste Rest. & Cabaret, Inc.*, 96 F.3d at 599. However, the *granting* of summary judgment based on qualified immunity does not lead to any loss of right

that cannot be remedied on appeal. *Branson v. City of Los Angeles*, 912 F.2d 334, 335 & n. 1 (9th Cir. 1990). Thus, the collateral order doctrine would not allow an interlocutory appeal of such a ruling. *Id.*

The collateral order doctrine analysis has been applied to the denial of a dispositive motion seeking enforcement of a release of liability, such as the release at issue in this case. *Chaput v. Unisys Corp.*, 964 F.2d 1299, 1301 (2d Cir. 1992) (collecting cases). In cases where the court denied summary judgment based on the release, the order would be appealable because a valid release of liability, like qualified immunity, should prevent the releasee from undergoing a trial on the claims which were released. *Id.* In *Chaput*, the court specifically compared its analysis to the denial of a motion to dismiss based on qualified immunity or based upon double jeopardy in a criminal action. *Id.* However, in this case, Judge McAvoy *granted* the remaining defendants' motion for summary judgment based on the release, so the collateral order doctrine does not support an interlocutory appeal.

The enforceability of the release is an issue in the appeal of the County defendant's dismissal, as well as in the motion for summary judgment of defendants Trinity and Sowers. However, although Judge McAvoy granted partial summary judgment in favor of the County defendants, he did not enter a final judgment or authorize an interlocutory appeal. Because the plaintiff's appeal of Judge McAvoy's ruling to the Second Circuit is premature, this court is not divested of jurisdiction over the current defendants' motion for summary judgment. *See, e.g., Mitrione ex rel. Melissa v. Monroe*, No. 1:02-CV-526 (LEK/RFT), 2009 WL 2485825, at \*2-3 (N.D.N.Y. Aug. 11, 2009) (because "defendants sought to appeal a non-final order without first obtaining a certificate of appealability ..., their appeal was plainly unauthorized and did not divest this Court of jurisdiction") (citations omitted).

### III. Relevant Facts

**\*3** Plaintiff states that he was incarcerated at OCF from October 20, 2016 to October 20, 2017. (AC ¶ 39). Plaintiff claims that OCF had a "procurement policy" ("OPP") and a contract with defendant Trinity Food Service Group ("Trinity") to provide meals for the OCF inmates. (AC ¶ 41). Plaintiff states that in October of 2016, he was served a "standard diet," but, at some unspecified time, his Jewish faith was "acknowledged" by OCF officials, and he was allowed to receive Kosher meals. (AC ¶ 44).

Plaintiff alleges that both the "standard" diet meals and the Kosher meals were inferior. (AC ¶ 46). Plaintiff claims that meals were cold, meat was served "uncooked," and fruit was "spoiled," causing plaintiff to throw up. Plaintiff alleges that the menus were "approved" by both dietician defendant Sowers and by former defendant Correctional Medical Center ("CMC"). Plaintiff claims that defendant CMC was "negligent" in its review of the menu because it approved a menu that was below the 2900 calories "required" by the OPP and "bid specification # 1881." (AC ¶ 46, 77) (citing Pl.'s Ex. F). Plaintiff states that defendant Sowers and CMC had "official duties" to provide humane conditions of confinement to plaintiff, ensuring that he received adequate food and medical care. [2] (AC ¶ 46).

In my recommendation, dismissing the case against CMC, I found that plaintiff failed to plead that the asserted constitutional deprivations were pursuant to an official custom or policy as required for liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Dkt. No. 119 at 7-12). Plaintiff's "naked assertions" that CMC had anything to do with reviewing or approving menus were insufficient to state a claim for municipal liability. (*Id.*) I noted in my report-recommendation that plaintiff had also named Trinity and Sowers, who did have some involvement in the plaintiff's food delivery. (*Id.* at 12 n.12).

Plaintiff central claim is that the Recommended Daily Allowance ("RDA") of 2900 calories was established by the National Academy of Sciences, New York Corrections Law § 45(6), and 9 N.Y.C.R.R. § 7009. (AC ¶ 47). Plaintiff alleges that Trinity contracted to provide food service to OCF, and that Oneida County "required" Trinity to provide a menu that contained "an average of" 2900 daily calories. (*Id.*) Plaintiff states that, after he "received the menu," he "realized" that Trinity was only providing 2600 calories, and that he was served between 2400 and 2600 calories per day in his Kosher menu. (AC ¶¶ 48-49). In addition to the alleged caloric deficiency, plaintiff claimed that portion sizes were too small, food was spoiled, food was served frozen, and condiments were not appropriate for diabetics. (AC ¶¶ 51, 79, 84, 88). Plaintiff claims that defendant Sowers "approved" the menu. (AC ¶¶ 49, 51).

## IV. <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**\*4** The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

"Even a pro se plaintiff ... cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint." [3] *Saldana v. Loc. 32B-32J Serv. Emps. Int'l Union*, No. 03 CIV.1853, 2005 WL 66895, at \*2 (S.D.N.Y. Jan. 12, 2005) (citing *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996)). "Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Id.* (citing Fed. R. Civ. P. 56(e); *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999)) (pro se plaintiffs must make proper evidentiary showing in order to defeat summary judgment). Evidence may be objectionable and inadmissible in connection with a summary judgment motion because, *e.g.*, it lacks foundation, is not based on personal knowledge of the source of the information, is irrelevant, or constitutes hearsay. *See Payne v. Cornell Univ.*, No. 18-

CV-1442 (GTS/ML), 2021 WL 39684, at *14 (N.D.N.Y. Jan. 5, 2021), *aff'd*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (Statements which "contain[ ] hearsay, conclusory assertions not based on personal knowledge, and statements contradicted by [plaintiff's] own previous deposition testimony" may be disregarded, in the discretion of the judge reviewing a summary judgment motion).

## V. General Releases

### A. Legal Standards [4]

"[G]eneral releases are governed by principles of contract law." *Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997). This rule applies even in cases involving pro se plaintiffs. *Duran v. J.C. Refinishing Contracting Corp.*, 421 F. App'x 20, 21 (2d Cir. 2011). Under New York law, "[w]here the language of a release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Tromp v. City of N.Y.*, 465 F. App'x 50, 51 (2d Cir. 2012). "Under New York law, the construction of an unambiguous contract is a matter of law, appropriate for summary judgment resolution." *Robinson v. Pierce*, No. 11 CIV. 5516, 2012 WL 833221, at *5 (S.D.N.Y. Mar. 13, 2012) (collecting cases).

### B. Analysis

**\*5** As stated above, in January of 2022, I recommended granting a motion to dismiss filed by former County defendants, based on a general release signed by plaintiff on February 7, 2020, in favor of Oneida County and numerous county officials, including former defendants Maciol, Swenszkowski, and Pfliger, in return for consideration of $10,000. (Dkt. No. 95). Judge McAvoy adopted the recommendation on January 25, 2022. (Dkt. No. 122). The release was signed in the following actions: *Burrell v. Rothdeiner, et al.*, 9:17-CV-906 (LEK/TWD), Dkt. Nos. 58-61; and *Burrell v. Maciol, et al.*, 9:19-CV-160 (TJM/DJS), (Dkt. Nos. 32-35). Although plaintiff has appealed Judge McAvoy's order enforcing the release on behalf of the County defendants, I may proceed to address the applicability of the release to plaintiff's claims against defendants Trinity and Sowers because, as discussed above, plaintiff's appeal is premature, and the district court has not been divested of jurisdiction to consider their summary judgment motion.

The "General Release of Claims" released the releasees:

... from any and all causes or rights of action, suits, actions, claims, or damages whatsoever which the undersigned Releasor has, ever had, or may have arising out of any actions, inactions, conduct, decisions, behavior, or events occurring on or before the date of this Release of Claims, including, but not limited to, any such claims arising out of Releasees' activities in regard to Releasor which were asserted, or could have been asserted, in the actions entitled Burrell v. Rothdeiner et al., Civil Action No. 9:17-[CV]-00906 and Burrell v. Maciol et al., Civil Action No. 9:19-[CV]-00160, in the United States District Court for the Northern District of New York, in which Releasor is Plaintiff, alleging claims inter alia under 42 U.S.C. § 1983, including without limitation claims for damages, costs, and attorney's fees.

(Dkt. No. 95 at 3) (citing Dkt. No. 50-2). In addition to the named defendants, the release applied to their "predecessors, heirs, executors, ... agents, attorneys, representatives, and employees, for conduct occurring prior to the execution of the release. (Dkt. No. 50-2). Plaintiff admitted that he signed the release on February 7, 2020. (Dkt. No. 95 at 3-4) (other citations omitted). I found the language of the release to be clear and unambiguous, notwithstanding plaintiff's various arguments to the contrary. (Dkt. No. 95 at 7-10).

"It releases the County Defendants by name, among others, from all causes of action and claims arising from conduct of the releasees on or before the February 7, 2020 date of the release, "including, but not limited" to any such claims that which were *or could have been asserted* in the two actions which plaintiff settled with Oneida County." (*Id.*) (citing Ex. A, Dkt. No. 50-2) (emphasis added). Although plaintiff admitted that he signed the release, he argued that the release should not apply to this action because it was ambiguous, contained deceptive language, was inconsistent with written communications that specified limitations on the

release,[5] and that the release was procured by fraud while plaintiff was under duress. (Dkt. No. 95 at 6).

My analysis of the County defendants' motion for summary judgment was based largely upon the Second Circuit's decision in *Fontanez v. Sanchez*, No. 19-1735, F. App'x, 2021 WL 3556932 (2d Cir. Aug. 12, 2021). (Dkt. No. 95 at 6-10). As I stated in my previous report-recommendation, pro se plaintiff, Fontanez, sued numerous correction officials, alleging violations of his civil rights while he was detained at Rikers Island between August 13, 2016, and the date he filed his complaint (February 23, 2018). (Dkt. No. 95 at 6); *Fontanez*, 2021 WL 3556932, at *1. On August 6, 2018, Fontanez signed a general release, settling a prior action alleging other violations of his civil rights at Rikers Island. *Id.* That general release provided, as relevant, that " 'in consideration of the payment of [§200],' " Fontanez released the defendants in the prior action, the City and its employees, officers, or agents, and any entity represented by the Corporation Counsel from any liability for any civil rights violation that arose prior to signing the release.[6] Upon a defense motion, the district court dismissed the complaint, reasoning that the language of the prior release was clear and unambiguous, encompassed the civil rights claims against the defendants in the more recent complaint, and discharged them from liability. *Id.*

**\*6** On appeal, Fontanez argued that the prior release was ambiguous and alleged that defense counsel in the prior action told him that the release only applied to the claims in that case. Fontanez also argued that he was subjected to duress, fraud, and undue influence when he signed the prior release because he was not represented by an attorney, he was asked to sign the agreement promptly, and he suffered from serious mental illness. *Id.* at *2. The Second Circuit held that the district court properly dismissed Fontanez's complaint because the release was unambiguous, and Fontanez's arguments that the release should not be enforced were meritless. *Id.* at *1-2.

In the instant case, I found that, notwithstanding plaintiff's conclusory arguments to the contrary, the general release he executed was clear and unambiguous. It released the County Defendants by name and the County, from all causes of action and claims arising from conduct of the releasees on or before the February 7, 2020 date of the release, "*including, but not limited*" to any such claims that which were or could have been asserted in the two actions which plaintiff settled with Oneida County. (Dkt. No. 95 at 7) (citing Ex. A, Dkt. No. 50-2) (copy of the release) (emphasis added). The complaint

in this action was first filed on December 30, 2019, so it clearly asserted claims that accrued before the date of the release.

I also found that plaintiff knew of this action prior to signing the release, and still agreed to release all claims based on conduct prior to the date of the release, "including, but not limited to" the claims in the two prior actions. (Dkt. No. 95 at 8) (citing *Fontanez*, 2021 WL 3556932, at *2) (rejecting Fontanez's argument that he believed the release only applied to his prior cases because the terms of the agreement unambiguously and explicitly released the City and its employees " 'from any and all liability, claims, or rights of action alleging a violation of [his] civil rights' ").

I rejected plaintiff's attempts to marshal extrinsic evidence to vary the terms of the release and his attempt at alleging fraud or deceit by opposing counsel in obtaining plaintiff's agreement to sign the release. (Dkt. No. 95 at 8-9). I noted that plaintiff was an experienced pro se litigant who could not have reasonably relied upon any misrepresentation about the scope of the release that he signed, given the clear language of the document. (Dkt. No. 95 at 10) (citing inter alia *Jeffers v. New York*, No. 14-CV-5659, 2014 WL 6675676, at *1 (E.D.N.Y. Nov. 25, 2014) (plaintiff, although pro se at the time he signed the general release, was an experienced and sophisticated pro se litigant, one factor that the court could considered in deciding whether to enforce the release)). I further noted that plaintiff received $10,000.00 in exchange for his settlement and release, which was a good deal more than the $200.00 received by Mr. Fontanez. (*Id.* at 10). Plaintiff in this case was attempting to "reap the benefits" of his settlement without accepting its consequences. *Id.*

Thus, I have previously determined that the release signed by plaintiff in the instant case is valid because it is unambiguous, was not obtained by fraud or deceit, and applies to the conduct alleged in this case. The time period covered by the release would also include the conduct alleged in the instant case. The court must now determine whether Trinity and Sowers may enforce the release against plaintiff.

Defendants Trinity and Sowers were not named defendants in the previous two settled cases. That is not necessarily an impediment to their inclusion in the individuals and entities covered in the release. The defendants in *Fontanez* were not defendants in Mr. Fontanez's prior case, although they were covered in the specific language of the release, inter alia, because they were "represented by the Corporation Counsel,"

a group specifically protected by release. *Fontanez*, 2021 WL 3556932, at *1.

**\*7** The County defendants in this action were clearly protected by the release. The court must, therefore, determine whether Trinity and Sowers are "predecessors, heirs, executors, ... agents, attorneys, representatives, [or] employees" of Oneida County, as listed in the instant release. The bid documents [7] specify that the vendor will be an "independent contractor," which shall "not be considered an employee of the County for any purpose," and its employees shall not hold themselves out as employees of the County. (Bid Document ¶ IV(A)(1) at 25) (Dkt. No. 140-3, CM/ECF p.34). Thus, defendants Trinity and Sowers would not be covered under the release as County "employees."

However, defendant Trinity, an independent contractor for the County, providing food services for OCF, "steps into the shoes of [Oneida County]," and may thus, in the appropriate circumstances, be held liable under section 1983, under the same municipal liability standard as used against the County. *Tutora v. Aramark Corr. Servs.*, No. 17-CV-9170 (KMK), 2022 WL 2237567, at *6-7 (S.D.N.Y. June 22, 2022). The question then is whether Trinity and its employee Sowers, although specifically, not "employees" of Oneida County, are either agents or representatives of the County, stepping into the shoes of Oneida County for purposes of the release.

An independent contractor may still be considered an "agent."

🚩 *United States v. Thomas*, 377 F.3d 232, 238 (2d Cir. 2004) (citing Restatement (Second) of Agency § 14N (1958)) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor.") In this case, a review of the bid documents shows that Trinity was providing a service for Oneida County that the County was required to provide for its inmates. The bid documents also show that Oneida County maintained a substantial amount of control over the vendor's activities. (Bid Document ¶ III(B) - establishing a multitude of rules and regulations that the contractor must follow in order to provide the services required).

In *Tutora v. Aramark*, 2022 WL 2237567, at *5, the court cited cases supporting the finding that when a private contractor performs "a role traditionally within the exclusive prerogative of the state ..., [it] is the functional equivalent of the municipality." (quoting *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013)

in the context of medical care providers). By providing food to OCF inmates, this court finds that Trinity performed a service that was in the exclusive prerogative of the municipality, and Oneida County exercised sufficient control over Trinity for the court to consider it an "agent" of the County with respect to the services provided to the inmates and to plaintiff.

Plaintiff's response to the defendants' motion reiterates the issues that plaintiff had with the food that he was served while at OCF and the damages that he alleges to have suffered based on the inadequacy of the calories and low quality food that he was served per day. (Dkt. No. 140). Although he addresses the issue of the release, he states that he was led to believe that the release did not cover this action (Dkt. No. 140 ¶¶ 52-54), an argument that he made before me on the County defendants' motion to dismiss, and one which I rejected in that report-recommendation. [8] (Dkt. No. 95 at 8 & n.4).

**\*8** Although Trinity and Sowers were not defendants in 9:19-CV-160, plaintiff did mention alleged deficiencies in the food that he was served. He did not assert the lack of calories or quality, instead, he claimed that the defendant County officials in that action "opened" his kosher meals, thus, contaminating them. [9] (Dkt. No. 1 in 19-CV-160 ¶¶ 61-62).

If, as plaintiff now claims, the food was severely inadequate during the same time, he certainly knew about it, and he could have raised the claim in 19-CV-160. In fact, in his response to defendants' motion for summary judgment in the instant case, plaintiff has filed the grievances mentioning caloric and other deficiencies in the food, that he brought during the time that he was incarcerated at OCF. (*See* Pl.'s Ex. C at CM/ECF p.45, 46, 47) (Grievances dated July 17, 2017 (cold and inadequate food), October 2 and 3, 2017 (grievances complaining that defendants were opening his meal tray and contaminating the food and that the "dietician" who approved the Kosher menu violated the caloric "goal")). [10] On September 25, 2017, plaintiff requested the calorie contents of his meals from CMC, and on September 29, 2017, October 4, 2017, and November 12, 2017, plaintiff complained to CMC [11] that he had eaten spoiled food or was not given enough calories. (Pl.'s Ex. D at CM/ECF 56, 57, 58, 59). Clearly, plaintiff was well-aware of his problems with the food service, and had exhausted his administrative remedies or could have exhausted his remedies prior to filing 19-CV-160 in February of 2019.

The release applies to claims that were, or *could have been*, raised in the prior action against the defendants and/or their agents, employees, or representatives. Based on my previous analysis in this case, I find that the release signed by plaintiff prevents him from bringing this action for inadequate food either against defendant Trinity or defendant Sowers, a Trinity employee, [12] and the amended complaint may be dismissed in its entirety as against these defendants. In the alternative, this court also finds that the plaintiff's claims against Trinity and Sowers fail on the merits.

## VI. Municipal Liability/Private Employer/Deliberate Indifference

### A. Legal Standards

#### 1. Municipal Liability

**\*9** As stated above, Trinity acts under color of state law, stepping into the shoes of the County for purposes of section 1983 liability. *Tutora, supra.* However, even if the private employer acts under color of state law, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official ... policy of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990). Because Trinity is a municipal contractor, the standard for determining its liability is the same as that required to establish municipal liability. *Tutora, supra*; *Swinton, supra.*

"A municipality or other local government may be liable under [ section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 692. A *Monell* claim requires " 'the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses.' " *Swinton, supra* (quoting *Iacovangelo v. Correctional Medical Care,*

624 F. App'x 10, 13-14 (2d Cir. 2015)) (citing *Jones v. Town of East Haven*, 691 F.3d 72, 80-81 (2d Cir. 2012)).

#### 2. Deliberate Indifference/Food

The Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's conditions of confinement claim. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). There are two prongs to such a claim: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' ... or 'mental element prong,' showing that the officer acted with at least deliberate indifference to the challenged conditions." *Drew v. City of New York*, No.18-CV-10719 (LTS/RWL), 2022 WL 19705, at \*5 (S.D.N.Y. Jan. 3, 2022). (quoting *Darnell*, *supra*) (citing *Jabber v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (explaining that, while "there is no static test to determine whether a deprivation is sufficiently serious[,]" inmates may not be deprived of basic human needs such as food, clothing, shelter, medical care, and reasonable safety, and they may not be exposed to conditions that pose an "unreasonable risk of serious damage to [their] future health") (internal quotations and citations omitted)).

### B. Analysis

As stated above, plaintiff alleges that Trinity and Sowers were responsible for the meals served at Oneida Correctional facility in 2016 and 2017. Plaintiff claims that he was required to be served 2900 calories per day, but he was served approximately 2700 calories per day, and the food was of substandard quality, causing him to lose weight and to have a variety of other health issues. In support of the motion for summary judgment, defendant Sowers has filed a declaration. (Sowers Decl.) (Dkt. No. 123-4). Defendant Sowers states that she is the East Region Dietician for Trinity. (Sowers Decl. ¶ 3). She is a registered dietician, with the Commission on Diatetic Registration, and she is a licensed dietician in New York State, specializing in food service and nutritional consultation for correctional institutions and detention facilities. (Sowers Dec. ¶ 4). She holds a Bachelor of Science degree in Human Nutrition and Foods from Virginia Polytechnic Institute and State University and is a member of the American Dietetic Association, the Virginia Dietetic Association and the Association of Correctional Food Service Affiliates. (*Id.*)

**\*10** As the East Region Dietician for Trinity, defendant Sowers is responsible for, inter alia, designing and approving menus which include nutritionally adequate meals, "pursuant to the specifications, directives and guidelines of the correctional institutions, detention facilities and government agencies for which Trinity is contracted to provide food service throughout the Eastern region of the United States, including the Oneida Correctional Facility." (Sowers Decl. ¶ 5). Defendant Sowers states that she analyzed and approved both the General Population and Kosher meals that were served to plaintiff during the time that he was incarcerated at Oneida. (Sowers Decl. ¶ 7).

New York State regulations provide that "the food service program in each local correctional facility shall ensure that all prisoners are provided with an appropriate level of nutrients and calories. Such appropriate level of nutrients and calories shall be based upon current recommended dietary allowances of the Food and Nutrition Board of the National Academy of Sciences, National Research Council." 9 N.Y.C.R.R. § 7009.2. (*See* Sowers Decl. ¶ 9). The Recommended Dietary Allowance, set by the National Academy of Sciences - National Resource Council for males between the ages of 19 and 50 is a range from 2400 to 2800 calories per day, not a specific number of calories. (Sowers Decl. ¶ 10).

Defendant Sowers states that the General Population menu provides for an ***average*** of 2900 calories per day, and the Kosher menu provides an ***average*** of 2747 calories per day. (Sowers Decl. ¶ 11). There is no National Academy of Sciences requirement that an inmate be served 2900 calories per day. (Sowers Decl. ¶ 10). Defendant Sowers has attached the "Cycle Meal Nutritional Analysis," which includes a four-week nutritional breakdown of the kosher meals provided at OCF. [13] (Sowers Decl. ¶ 10 & Ex. A). Defendant Sowers states that all the meals, if consumed as prepared, met or exceeded the minimum standards established by the National Academy of Science. (Sowers Decl. ¶ 12).

The menus were nutritionally adequate, and "to the best of [her] knowledge, information and belief each of the meals prepared for Plaintiff during his confinement at Oneida Correctional Facility were complete, nutritionally adequate and complied with the approved menus and related substitution policies in all respects ***prior to leaving Trinity's possession, custody and control***." (Sowers Decl. ¶ 14) (emphasis added). Defendant Sowers stated that, at no time, did Trinity have a policy or custom of providing nutritionally

deficient meals to the OCF population, and that she was unaware of any medical problems suffered by plaintiff relating to plaintiff's diet. (Sowers Decl. ¶¶ 15-16). If she or Trinity had learned of such a problem, plaintiff would have been provided with a proper replacement meal. (Sowers Decl. ¶ 16).

The "Cycle Meal Nutritional Analysis" for May of 2017, shows that the General Population meals averaged 2900 calories per day, and the Kosher meals averaged 2747 calories per day. (Sowers Decl. ¶ 11 & Ex. A). She states that these meals "are a nutritionally adequate diet." (Sowers Decl. ¶ 13). To the extent that plaintiff's claim is only about the number of calories he received per day, such claim may be dismissed. It is clear that there is no nutritional "standard" requiring a fixed 2900 calories per day, and plaintiff has not shown otherwise with admissible evidence. [14]

**\*11** During plaintiff's deposition, he cited various cases in which Trinity and its employees were "involved" in a law suit over food service at a correctional facility. (Pl.'s Dep. at 41-42, 45-46). He cited *Hill v. Montgomery*, No. 9:14-CV-933 (BKS/DJS), 2019 WL 5842822 (N.D.N.Y. Nov. 7, 2019). [15] In *Hill*, plaintiffs brought a class action, challenging the nutritional value and quality of the food at the Montgomery County Jail, which was also provided by Trinity. *Id.* at \*1. Trinity, however, was not a defendant in *Hill*. Plaintiff named only Montgomery County officials who were responsible for providing the food. *Hill* was settled, but not by Trinity. Plaintiff misspeaks when he alleges that Trinity "settled" in *Hill*. On June 2, 2021, Judge Sannes approved a final settlement in *Hill*, and the case was "dismissed on the merits and with prejudice." *Hill v. Montgomery*, No. 9:14-CV-933 (BKS/DJS), 2021 WL 2227796, at \*10 (N.D.N.Y. June 2, 2021).

Plaintiff also mentioned a case from the Southern District of Florida. *Shepard v. Alvarez*, No. 08-10090, 2009 WL 1872016 (S.D. Fla. May 21, 2009), *report-recommendation adopted*, 2009 WL 2207735 (S.D. Fla. July 21, 2009). In *Shepard* plaintiff sued Linda Alvarez, the Food Service Director for the Monroe County Detention Center ("MCDC") [16] and Sandra Sternal, the Regional Dietician for Trinity. While the court denied summary judgment to defendant Alvarez, the court granted summary judgment and dismissed the action in favor of defendant Sternal. *Id.* at \*6.

In granting summary judgment in favor of defendant Sternal, the court reasoned that defendant Sternal's position, the same

position held by defendant Sowers in this case, involved "designing menus that outline nutritionally adequate inmate meals under specifications, directives and guidelines of the correctional institutions, like MCDC, for which Trinity is contracted to provide food services in the Southeast Region of the United States." *Id.* The court further found that

> where the thrust of Shepard's complaint is that the designed menu is not followed, and that he does not receive the intended 2,800 calories per day, there is no showing of a causal connection between the defendant Regional Dietician, Sternal, and the deprivation alleged by plaintiff Shepard. In the absence of a showing that the essential element of causation has been satisfied, it is apparent that the complaint against defendant Sternal should be summarily dismissed.

*Id.*

Essentially, plaintiff in this action makes the same claims against defendant Sowers that the plaintiff in *Shepard* made against defendant Sternal. Defendant Sowers has submitted expert information regarding the menus designed for both the general population and the kosher meal recipients during the relevant time at OCF. Plaintiff's assumption that 2900 calories per day is "required" is incorrect, and he has failed to support this claim with any admissible evidence. The bid documents require only an "average" of 2900 calories, and even though the kosher meals contain fewer average calories than the general population meals, a contract, or even a state regulation does not create a constitutional right. *Patterson v. City of New York*, No. 11 Civ. 7976(DLC), 2012 WL 3264354, at *4 (S.D.N.Y. Aug. 9, 2012) (violations of state regulations or "minimum standards" do not constitute violations of federal rights.) (citations omitted).

Defendant Sowers states that she was unaware of any issues that plaintiff had with his meals or his health. (Sowers Decl. ¶ 16). Plaintiff has not presented admissible evidence that would indicate otherwise. During plaintiff's deposition, he did not even remember that Jennifer Sowers was a defendant in this action, and until defense counsel pointed

that out to plaintiff, he stated that he had never spoken to such an individual. (Pl.'s Dep. at 65-66). Plaintiff made the unsupported claim that he wrote defendant Sowers a "letter" about the food, but never received an answer. (Pl.'s Dep. at 66). Thus, plaintiff has failed to raise a genuine issue of material fact with respect to defendant Sowers's personal involvement in any alleged deficiency in the food he was served, beyond the prescribed caloric content, which did not rise to the level of a constitutional violation. Thus, the amended complaint may also be dismissed against her on the merits.

**\*12** During his deposition, plaintiff stated that he could not remember many things, but asserted that he lost "well over 40 pounds." (Pl.'s Dep. at 56). However, plaintiff's medical records indicate that when he arrived at OCF on October 20, 2016, he weighed 168.4 pounds. (Def.s' Ex. No. 3 at p.1) (Dkt. No. 123-6). On April 5, 2017, he weighed 174.2. (*Id.* at p.2). By May 27, 2017, plaintiff weighed 179 pounds. (*Id.* at p.3). On June 24, 2017, plaintiff weighed 177.4 pounds. (*Id.* at p.4). On August 5, 2017, plaintiff weighed 174 pounds. (*Id.* at p.5). On October 4, 2017, plaintiff weighed 171.2 pounds. (*Id.* at p.6). Thus, when he left OCF, plaintiff weighed more than when he arrived, and during the period he claims that his food was substandard, he actually gained several pounds. His statement that he lost "well over" 40 pounds is flatly unsupported by any evidence. When he was confronted with these records at his deposition, he implied that the records might have been "fabricated." However, there was absolutely no basis for such an allegation. (Pl.'s Dep. at 57).

This case is distinguishable from *Hill v. Montgomery*, a class action in which the plaintiffs submitted a great deal of evidence supporting their claims that the food, as served to them was deficient, and substitutions were not properly made when the kitchen ran out of a particular item. During plaintiff's deposition in this action, he mentioned that one of his "experts" would be "William Graber, M.D." (Pl.'s Dep. at 67). Dr. Graber was one of the defendants' experts in *Hill*, but plaintiff in this case did not explain how Dr. Graber was going to testify on plaintiff's behalf. (*Id.* at 67-68) Plaintiff implied that he might be represented by the attorney who represented the plaintiff's in *Hill*, but then admitted that he did not have counsel. (Pl.'s Dep. at 73-75). As stated above, although plaintiff testified that he lost "over 40 pounds," the medical records clearly show that when he left OCF he was slightly heavier than when he arrived. Other than naked assertions, plaintiff has failed to assert that he had any health problems as the result of inadequate or spoiled food.

None of the allegations made by, or "evidence" submitted by plaintiff establish that Trinity had a policy or custom of providing nutritionally deficient meals to the OCF population, either to the general population or to the individuals receiving Kosher meals. Defendant Sowers has established that she approved nutritionally appropriate meals, and that she was unaware of any problems that were being experienced by the plaintiff relating to the meals he was actually being served. Thus, plaintiff has failed to raise a genuine issue of material fact with respect to the conduct of either defendant.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 123) be **GRANTED**, and the amended complaint **DISMISSED IN ITS ENTIRETY** as against the remaining defendants **TRINITY** and **SOWERS**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2022 WL 16755840

---

### Footnotes

1   *Burrell v. Rothdeiner et al.*, No. 9:17-CV-906 (LEK/TWD) and *Burrell v. Maciol et al.*, No. 9:19-CV-160 (TJM/DJS).

2   "Medical care" is not an issue in this motion.

3   "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding pro se. In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 209-10 (N.D.N.Y. 2008)

4   This summary of the applicable law quotes liberally from *Swinson v. City of New York*, No. 12 Civ. 6080, 2015 WL 873390, at *2-3 (S.D.N.Y. Feb. 11, 2015).

5   Plaintiff claimed that these "written communications" of which he was no longer in possession, would show that the release was limited to the two actions explicitly referenced in the release for which he was receiving the settlement. (Dkt. No. 95 at 6).

6   I noted in my report-recommendation that the release also provided that it could not be changed orally, and that Fontanez read the release and fully understood it. (Dkt. No. 95 at 7 n.2) (citing 2021 WL 3556932, at *1).

7   The actual contract, signed by Trinity to provide food services has not been submitted as an exhibit with this motion. The plaintiff has filed the bid documents as an exhibit. (Pl.'s Ex. H) (Dkt. No. 140-3 at CM/ECF pp. 11-52). These documents contain the requirements, applicable to the food service vendors hired by Oneida County to deliver food service to the inmate population at OCF. (*Id.*)

8    Exhibit I in plaintiff's response to the instant summary judgment motion includes his objections to my August 2021 Report-Recommendation. (Pl.'s Ex. I) (Dkt. No. 140-3 at CM/ECF 54-58).

9    The court also notes that the issue was resolved as a free-exercise religion claim, not a claim that the food itself was inadequate. (Dkt. No. 8 in 19-CV-160 at 24).

10   Plaintiff's Exhibit G is the copy of a grievance, dated September 5, 2017, specifically mentioning Trinity and the "dietician." (Pl.'s Ex. G, CM/ECF p.10) (Dkt. No. 140-3).

11   Plaintiff's complaints to CMC alone, would not have been sufficient to exhaust his administrative remedies. See *Woodford v. Ngo*, 548 U.S. 81, 90-103 (2006) ("proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court). Plaintiff did bring grievances, as discussed infra. His exhaustion is not an issue in this case. The court is citing these complaints to CMC only to show that plaintiff was well-aware of his potential claims long before he filed 19-CV-160, and could have raised them in that action for purposes of the release.

12   In her declaration in this action, defendant Sowers states that she is an employee of Trinity. (Sowers Decl. ¶ 3).

13   These numbers apply to "sedentary" males, which includes inmates. (Sowers Decl. Ex. A).

14   During his deposition, defense counsel asked how plaintiff knew that he was not getting sufficient calories, and plaintiff stated that he could tell "by eye," based upon eating "a lot of meals." (Pl.'s Dep. at 39). This response is clearly not admissible evidence that plaintiff was being served calorically insufficient meals.

15   Judge Sannes issued various decisions in *Hill*, and plaintiff did not cite a specific opinion. However, the court has assumed that plaintiff is referring to the denial of the defendants' summary judgment in the above cited decision.

16   This "Monroe" County is in Florida.

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   11

2022 WL 19705
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Keith **DREW**, Plaintiff,
v.
**CITY** OF **NEW YORK** et al., Defendants.

No.
**18**
-
**CV**
-
**10719**
-LTS-RWL
|
Signed 01/03/**2022**

\*\*\* Start Section
...

**Attorneys and Law Firms**

Keith **Drew**, New York, NY, Pro Se.

Christopher Ferreira, Lillian P. Wesley, Andrew James Rauchberg, **New York City** Law Department, **New York**, NY, for Defendant **City** of **New York**.

Lillian P. Wesley, Andrew James Rauchberg, **New York City** Law Department, **New York**, NY, for Defendants Correction Officer Jeffrey, Tonya Glover, Correction Officer Joel Andrews, Corrections Officer Unisha Flood, Commissioner Brann, Commissioner, Warden Smalls, Doctor Marie-Ange Dorval.

MEMORANDUM ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge

 **\*1** Keith **Drew** ("Plaintiff") brings this pro se action against the **City** of **New York**, former Department of Correction Commissioner Joseph Ponte, former Commissioner Cynthia Brann, former Warden Maxsolaine Mingo, Warden Kisa Smalls, Captain Doe, Correction Officer ("C.O.") Unisha Flood, C.O. Cynthea Cowan, C.O. Joel Andrews, C.O. Edward Jeffries, Doctor Marie-Ange Dorval and **New York City** Board of Correction employee Tonya Glover (together,

"Defendants") alleging that Defendants violated his federal constitutional rights while he was detained at the George R. Vierno Center and the Anna M. Kross Center on Rikers Island. (See docket entry no. 22 ("Am. Compl.").)

Defendants [1] move for dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket entry no. 30.) Defendants have also moved for partial summary judgment in this action. (Docket entry no. 37.) Plaintiff has not responded to either motion. The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331. The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendants' motion for partial summary...

\*\*\* Start Section

...s [2] that, while he was a pretrial detainee at Rikers Island, see Am. Compl. ¶¶ 21-22, 28, 43, he experienced four lockdowns that were "void of legitimate penological justification" and "served to punish" him in violation of his Constitutional rights. (Id. ¶ 37.) Plaintiff alleges that he suffered a five-day lockdown in December 2015, id. ¶ 11; a 72-hour lockdown from February 29, 2016, through March 2, 2016, id. ¶ 2; an approximately 18-hour lockdown from March 10, 2016, through March 11, 2016, id. ¶ 3; and a 12-hour lockdown from September 13, 2018, through September 14, 2018. (Id. ¶ 43.) Plaintiff attaches a letter from the Legal Aid Society's Prisoner Rights Project ("Legal Aid") relating to a report of the December 2015 lockdown that Legal Aid received from Mr. **Drew**, noting that Mr. **Drew** says he was "denied" "all mandated services, including medical clinic access / sick call" during that time. (Am. Compl., Exhibit 1 ("Legal Aid Letter").) During the lockdown that occurred from March 10, 2016, through March 11, 2016, Plaintiff alleges that he "received scalding, hot water burns from a gang-af[f]iliated inmate" and "suffered the pain of this burn injury for a full six (6) hours before finally being released" and "escorted to the clinic for medical attention." (Id. ¶¶ 4-5.) Plaintiff alleges that the "seriousness of the burn injury" was minimized and "not adequately document[ed][,]" id. ¶ 6, nor "properly treated" until "another Injury Report, [was] submitted on March 23, 2016[.]" (Id. ¶ 13.) Plaintiff also attaches a copy of the inmate grievance...

\*\*\* Start Section

... unit were infringed through their placement in "lockdown status continuously." (Am. Compl., Exhibit 1, Victim Declaration.) He seeks injunctive and declaratory relief and "compensatory and actual damages." (Am. Compl.)

Defendants filed a motion to dismiss Plaintiffs' claims on March 27, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted. (Docket entry no. 30.) Defendants also filed a motion for partial summary judgment on June 12, 2020, arguing that all of Plaintiff's claims arising from the alleged conduct pre-dating November 8, 2016, should be precluded based on the terms of a general release that Plaintiff executed as part of a settlement of three actions Plaintiff had filed against the City of New York and its employees. (Docket entry nos. 37, 40.) In connection with their motion for summary judgment, Defendants proffered a Local Rule 56.1 Statement and a Declaration of Lillian P. Wesley, to which the parties' November 8, 2016, settlement agreement and general release were attached. (Docket entry nos. 38-39.) The general release stipulates:

> [I]n consideration of the payment of five thousand ($5,000) DOLLARS to [Mr. **Drew**] by the **City** of **New York**, [Mr. **Drew**] do[es] hereby release and discharge defendants **City** of **New York** ... and all past and present officials, employees, representatives, and agents of the **City** of **New York** or any entity represented by the Office of the Corporation Counsel, ... from any and all liability, claims, or rights of action alleging a violation of [his] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees.

(Docket entry no. 38, Declaration of Lillian P. Wesley ("Wesley Decl."), Exhibit 1.)

Mr. **Drew** has not responded to either Defendants' motion to dismiss or their motion for partial summary judgment, despite being served with the appropriate notice by Defendants that his claims may be dismissed without a trial should he choose not to respond to their summary judgment motion. (Docket entry no. 41.) Thus, the Court finds both motions to be fully briefed and unopposed.

## DISCUSSION

### Defendants' Motion for Partial Summary Judgment

Because Defendants' motion for partial summary judgment is potentially dispositive as to all of Plaintiff's claims with the exception of those arising out of the September 2018 lockdown, which "are addressed in Defendants' motion to dismiss," docket entry no. 40 ("Def. MSJ Mem.") at 1 n.1, [3] the Court will first evaluate Defendants'...

**\*\*\* Start Section**

... of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ⚑ Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotations and citations omitted). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, **drawing** all inferences and resolving all ambiguities in its favor." ⚑ Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

**\*3** Defendants argue that Plaintiff's claims arising from incidents predating November 8, 2016, should be dismissed because those claims are covered by the general release he signed in connection with his November 8, 2016, settlement agreement pertaining to three actions he previously filed against the **City** of **New York** and its employees. (Def. MSJ Mem. at 1-2.) Defendants argue that the general release precludes Plaintiff's claims arising from the incidents that allegedly occurred in December 2015, and February through March 2016, because those claims predated the signing of the agreement. (Id. at 2 (explaining that the general release released "the City and its employees from all constitutional violations that allegedly occurred prior to November 8, 2016").) In support of this argument, Defendants refer the Court to the text of the release and the decision in **Drew v. City of New York**, No. 18-CV-10714-ER, 2019 **WL** 3714932 (S.D.N.Y. Aug. 6, 2019), see Def. MSJ Mem. at 4, in which Judge Ramos dismissed Mr. **Drew's** complaint alleging violations of his constitutional rights arising out of

incidents that allegedly occurred while he was in custody during February and July of 2016. In reaching that decision, Judge Ramos agreed with Defendants that the same general release at issue here precluded Mr. **Drew's** claims, relying on the rationale that (1) Mr. **Drew** had not contested the authenticity of the release; (2) the incidents at issue pre-dated the release; (3) the language of the release was "unambiguous and enforceable"; (4) Mr. **Drew** received consideration in the form of payment from the city in exchange for the relinquishment of his right to bring suit against the City for violations of his civil rights predating the release; and (5) Defendants were within the scope of the release because they were employees of the **City** of **New York**. **Drew**, 2019 **WL** 3714932, at *3-4.

The Court finds Judge Ramos' reasoning in **Drew** persuasive and reaches the same conclusion here, finding that Mr. **Drew's** claims that arose before the general release are precluded. First, Mr. **Drew** did not oppose Defendants' motion for partial summary judgment and therefore presented no challenge to "the authenticity of the release, his signature on the release, or conditions under which he signed the release." **Drew**, 2019 **WL** 3714932, at *3. Moreover, because Defendants have proffered a copy of the release, which contains Mr. **Drew's** signature and was authenticated by a notary public, the Court concludes that no reasonable jury could find that the document is inauthentic based on the current record. Stephens v. Barnes, No. 16-CV-7133-LGS, 2018 **WL** 618454, at *2-3 (S.D.N.Y. Jan. 25, 2018) (noting that "the General Release is notarized, which creates a rebuttable presumption that the signature is genuine"). Second, the claims arising from the December 2015 and February–March 2016 incidents, and the Defendants in this action, fall within the scope of the general release because the alleged incidents predate the November 8, 2016, agreement and the claims are asserted against the "**City** of **New York**" and its "employees," namely employees of the **New York City** Department of Correction and Correctional Health Services. Third, the Court agrees with Judge Ramos' finding in **Drew** that the language of the general release is "unambiguous and enforceable." **Drew**, 2019 **WL** 3714932, at *3; see also Braxton/Obed-Edom v. **City** of **New York**, No. 17-CV-199-GBD-SDA, 2020 **WL** 1303558, at *3 (S.D.N.Y. Mar. 19, 2020) (finding that general release between the plaintiff and the **City** of **New York** was "unambiguous" and "if not void, bar[red] Plaintiff's claims"); Stephens, 2018 **WL** 618454, at *2-3 (granting defendants' motion for summary judgment where the "General Release, by its clear and unambiguous terms, preclude[d] the claims in [the] lawsuit" and "no reasonable juror could conclude

that the Complaint's claims under [section] 1983 for alleged violations of Plaintiff's constitutional rights [were] not barred by the General Release").

Thus, the Court dismisses Mr. **Drew's** claims that pre-date the signing of the November 8, 2016, release. Only Mr. **Drew's** allegations relating to the September 2018 lockdown remain. Plaintiff alleges that he was "locked-in at 9:00 p.m., Sept. 13, 2018[,]" and "only allowed to lock-out twelve (12) hours later at 9:00 a.m., Sept. 14, 2018." (Am. Compl. ¶ 43). The Court will now turn to the arguments the Defendants raised in their motion to dismiss regarding those allegations.

Defendants' Motion to Dismiss
To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to **draw** the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts as true all well-pleaded factual allegations in the complaint and **draws** all reasonable inferences in the nonmoving party's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

**\*4** Where, as here, a litigant proceeds pro se, that litigant's submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted) (emphasis in original). "This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " Id. at 475...

*** Start Section
... classification[ ] than those in dorm-status classification." (Id. ¶ 28). Defendants argue that Plaintiff has failed to state a claim that his First Amendment right to freedom of association was violated because his allegations are "vague and conclusory," and to the extent "Plaintiff alleges that ... he could not freely interact with other inmates"

during the lockdown, "Plaintiff has no constitutional right to associate with other inmates." (Docket entry no. 31 ("Def. MTD Mem.") at 6.)

The Supreme Court and courts within this District have found that "an inmate 'does not retain rights inconsistent with proper incarceration,' and 'freedom of association is among the rights least compatible with incarceration.' " Miller v. Annucci, No. 17-CV-4698-KMK, 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (quoting Overton v. Bazzetta, 539 U.S. 126, 131 (2003)). The Constitution does " 'protect[ ]certain kinds of highly personal relationships' and there exists 'a right [of inmates] to maintain certain familial relationships, including association among members of an immediate family.' " Id. (quoting Overton, 539 U.S. at 131); see also Brogdon v. City of New York, No. 16-CV-8076-LAK-RWL, 2018 WL 4762981, at *12 (SDNY Aug. 8, 2018) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to [section] 1983 protection."). However, "inmates' associational rights can be permissibly curtailed to a great degree due to the very nature of incarceration." Little, 51 F. Supp. 3d at 494 n.11; see also Miller, 2019 WL 4688539, at *13 (explaining some "curtailment" of the freedom of association "must be expected in the prison context" (internal quotation and citation omitted)).

While inmates retain a certain degree of the freedom to associate among their immediate family members, courts have found that "an inmate does not have a 'constitutional or statutory right to ... associate with other inmates.' " Vega v. Artus, 610 F. Supp. 2d 185, 202 (N.D.N.Y. 2009) (quoting Fisher v. Goord, 981 F. Supp. 140, 169 (W.D.N.Y. 1997)); see Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 125-26 (1977) ("Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls .... Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates."). Moreover, "[t]o the extent that a prison procedure curtails a prisoner's freedom to associate, the prisoner's constitutional right is not violated if the procedure 'bear[s] a rational relation to legitimate penological interests.' " Amaker v. Annucci, No. 14-CV-9692-KMK, 2016 WL 5720798, at *4 (S.D.N.Y. Sept. 30, 2016) (internal quotation and citation omitted); see also Whittington v. Ponte, No. 16-

CV-1152-AJN, 2020 WL 2750372, at *14 (S.D.N.Y. May 27, 2020) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right. This is true for pretrial detainees as well."). The "burden ... is not on the State to prove the validity of prison regulations[,] but on the prisoner to disprove it." Amaker, 2016 WL 5720798, at *4 (quoting Overton, 539 U.S. at 132.)

**\*5** The Court finds that Plaintiff has failed to state a claim that the September 2018 lockdown violated his First Amendment right to freedom of association. First, although Plaintiff claims that he filed this action "for violations of the Freedom of Association clauses," Am. Compl. ¶ 1; that the "Freedom of Association ... will continue to be ... curtailed by these discretion abuses," id. ¶ 8; and that the "arbitrary lockdown procedures" constitute an "unreasonable interference with familial associations," id. ¶ 41, his allegations lack factual content explaining how the 12-hour lockdown in September 2018 violated his freedom to associate. To the extent Plaintiff is aggrieved about interference with his "familial associations," id., Plaintiff does not allege that such lockdown deprived him of contact with members of his family, by pleading, for example, that the lockdown resulted in missed opportunities for telephone calls or visits with particular loved ones. To the extent Plaintiff is aggrieved that he was separated from other inmates during that 12-hour period, Plaintiff similarly fails to put forth any specific allegations regarding his isolation from fellow inmates and any harm that was caused. Moreover, the Court notes that, while the Constitution protects an inmate's right to "maintain certain familial relationships, including association among members of an immediate family," Miller, 2019 WL 4688539, at *13 (internal quotation and citation omitted), it is not aware of any authority within this District protecting the right of inmates to associate with each other over the course of a twelve-hour period.

Therefore, the Court finds that Plaintiff has failed to state a claim that his First Amendment right of association was violated through the September 2018 lockdown.

### 2. Conditions of Confinement

Defendants acknowledge that "Plaintiff's allegation[s] concerning the lockdown[ ] can be construed as raising a claim for unconstitutional conditions of confinement[,]" but argue that "Plaintiff has failed to satisfy both parts of the

[requisite] standard" for plausibly alleging such a claim. (Def. MTD Mem. at 7.)

To plead a claim for unconstitutional conditions...

\*\*\* Start Section

... "there is no static test to determine whether a deprivation is sufficiently serious[,] .... "prisoners may not be deprived of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health") (internal quotations and citations omitted).

Plaintiff has not alleged that he suffered any harm—let alone that he was "deprived of [any] basic human need"—during the 12-hour lockdown in September 2018, Jabber, 683 F.3d at 57, nor does Plaintiff allege that any Defendant "knew or should have known" that the September 2018 lockdown posed an "unreasonable risk of serious damage to his health."

Darnell, 849 F.3d at 30; see also Corley v. City of New York, No. 14-CV-3202-GHW, 2017 WL 4357662, at \*12 (S.D.N.Y. Sept. 28, 2017) (finding "[p]laintiff's allegations do not plead the necessary requirements" for a claim for unconstitutional conditions of confinement where plaintiff's pleading "contain[ed] no facts to suggest that the lock-downs [at issue] caused him any harm whatsoever"). Thus, the Court concludes that Plaintiff has failed to plausibly allege a claim for unconstitutional conditions of confinement arising from the September 2018 lockdown.

### 3. Due Process

Plaintiff alleges that an "inaccurate [h]igh [c]harge [infraction] as part of a classification policy" was utilized in 2018 and "injured [him] with an undue burden of lock-down in cell-status housing without legitimate purpose." (Am. Compl. ¶¶ 33-34.) He further alleges that "[d]uring this classification error, ('DOC') failed to provide an adequate forum for assistance and subjected Plaintiff to lock-down abuse in the wrong classification housing unit, in complete and utter disregard for Due Process protection." (Id. ¶ 35.) Defendants argue that, to the extent Plaintiff alleges a violation of procedural and substantive due process under the Fourteenth Amendment, Plaintiff has failed to state a claim.

\*6 To proceed on a procedural due process claim, "a plaintiff must establish that (1) he possessed a liberty interest, and (2) he was deprived of that interest through insufficient

process.' " Walker v. Shaw, No. 08-CV-10043-CM, 2010 WL 2541711, at \*4 (S.D.N.Y. June 23, 2010) (citing Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004)). A pretrial detainee "has a liberty interest, protectable under the Due Process Clause, where 'conditions amount to punishment of the detainee' " since "the 14th Amendment protects an individual's liberty interest in avoiding punishment before the legal adjudication of guilt." Valdez v. City of New York, No. 11-CV-05194-PAC-DF, 2013 WL 8642169, at \*7 (S.D.N.Y. Sept. 3, 2013), report and recommendation adopted 2014 WL 2767201 (S.D.N.Y. June 17, 2014) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)). However, if the "restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." Id. (quotation omitted); see also Taylor v. Comm'r of New York City Dep't of Corr., 317 F. App'x 80, 82 (2d Cir. 2009) ("Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment 'generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' ") (citation omitted).

Defendants argue that Plaintiff fails to allege a procedural due process claim based on his allegedly erroneous classification that resulted in his placement in "cell-status housing" where he was subject to the September 2018 lockdown, Am. Compl. ¶¶ 34, 43, because Plaintiff "fails to allege that his housing placement or his security classification were punitive[,] [and] [i]n the absence of such allegations, Plaintiff does not have a liberty interest in connection with either his housing placement or his security classification." (Def. MTD Mem. at 9.)

The Court agrees. Plaintiff alleges that his security classification was based on "inaccurate" "high charge[s]" as part of a "classification policy" that caused him "undue burden, and punishment." (Am. Compl. ¶¶ 31, 33-34.) However, Plaintiff fails to put forth any allegations that Defendants operated with an "expressed intent to punish," Taylor, 317 F. App'x at 82, when they determined his classification level or housed him in "cell-status" housing. (Am. Compl. ¶ 36); Valdez, 2013 WL 8642169, at \*6, 8 (S.D.N.Y. Sept. 3, 2013) (dismissing Plaintiff's "claim that,

as a pretrial detainee he had a liberty interest ... in being free from unlawful 'punishment,' and that his ... classifications constituted such punishment" where Plaintiff "ha[d] not alleged that either [challenged] classification was imposed with an 'expressed intent to punish' "); Hosannah v. Nassau Cty. Criminal Supreme Court Sergeant Officer(s), No. 16-CV-1045-JFB-AYS, 2017 **WL** 3207966, at \*9 (E.D.N.Y. July 5, 2017), report and recommendation adopted sub nom. Hosannah v. Sposato, 2017 **WL** 3207750 (E.D.N.Y. July 26, 2017) (finding Plaintiff failed to allege a due process claim based on his "escape risk" classification because he failed to allege "that the classification was imposed with an 'expressed intent to punish' ").

Nor has Plaintiff alleged any facts "to give rise to a plausible inference that the conditions associated with his classification[ ] were excessive in relation to the legitimate government interests." Valdez, 2013 **WL** 8642169, at \*8-9 ("[A] due-process challenge to a detainee's administrative classification may also be dismissed under Rule 12(b)(6), where the plaintiff has alleged no intent to punish and no consequences of the classification that could be considered punitive in nature."); Little, 51 F. Supp. 3d at 496 (dismissing due process claim centered on classification in security risk group, in part, because plaintiff failed to allege "conditions so extreme as to amount to punishment"); Corley, 2017 **WL** 4357662, at \*10 (finding Plaintiff failed to plead a due process claim where he had "not pleaded any facts to suggest that [the] deprivation was not part of the ordinary administration of the [facility]"); Lewis v. Amato, No. 12-CV-607, 2013 **WL** 3387078, at \*6, 11 (N.D.N.Y. July 8, 2013) (finding pretrial detainee demonstrated liberty interest "raising due process concerns" where he "spent 140 days ... in an environment" where "he was locked in his cell for twenty-three hours a day"). To the contrary, Plaintiff's classification seems to reflect Defendants' efforts to "maintain[ ] institutional security and preserv[e] internal order and discipline," Bell, 441 U.S. at 546-47, by "separat[ing] potentially disruptive groups of inmates." Walker, 2010 **WL** 2541711, at \*4.

\*7 In addition, to the extent Plaintiff argues that his liberty interests were violated because Defendants' conduct did not comply with the **New York City** Board of Correction's Minimum Standard 1-05 on Lock-In Time, the Court notes that the Board of Correction's Minimum Standards do not "give[ ] rise to a liberty interest that protects Plaintiff from

security classification (or mis-classification)." Walker, 2010 **WL** 2541711, at \*6; see also id. (collecting cases where courts in this District "have concluded that the Minimum Standards do not create a protectable liberty interest").

Therefore, the Court finds that Plaintiff has failed to state a viable claim for violation of procedural due process because he has failed to allege facts indicating that his classification was punitive, and "administrative classification ... does not give rise to a protectable liberty interest." Walker, 2010 **WL** 2541711, at \*4.

Defendants also argue that Plaintiff fails to state a claim for violation of substantive due process because he has failed to allege a hardship that is " 'substantially more grave' than the typical ... hardships experienced by prisoners of the general population." (Def. MTD Mem. at 9 (citation omitted).) To state a claim that "an official's conduct violated substantive due process under the Fourteenth Amendment, a plaintiff must allege that a government official deprived him or her of a fundamental right and that the conduct of the official in doing so 'was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " Pape v. Cook, No. 3:20-CV-1324-VAB, 2021 **WL** 2186427, at \*11 (D. Conn. May 28, 2021) (quoting Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021)). "Conduct that is merely 'incorrect or ill-advised' does not constitute conduct that may form the basis of a substantive due process claim." Id. (quoting Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)).

The Court finds that Plaintiff's allegation that he, and the inmates within his housing unit, were subject to a twelve-hour lockdown from 9:00 p.m. on September 13, 2018, until 9:00 a.m. on September 14, 2018, see Am. Compl. ¶ 43, is insufficient to state a claim that Defendants' conduct violated substantive due process. See e.g., Pape, 2021 **WL** 2186427, at \*12 (dismissing substantive due process claim where plaintiff alleged he was subjected to a "two-week confinement in a quarantine cell"); Sandin v. Connor, 515 U.S. 472, 483-484 (1995) (identifying two examples of conduct that would be sufficiently egregious to violate a prisoner's right to substantive due process: involuntary transfer to a mental health hospital and involuntary administration of psychotropic drugs).

Having found that Plaintiff's allegations fail to plead plausibly a claim for violation of a constitutional right, the Court

need not reach the Defendants' arguments that Plaintiff has failed to allege the personal involvement of Defendants Ponte, Brann, Smalls, and Glover in any violations and has also failed to allege facts suggesting municipal liability. See e.g. Corley, 2017 **WL** 4357662, at *22 (finding City cannot be liable where "plaintiff cannot establish a violation of his constitutional rights") (internal quotation and citation omitted).

<u>CONCLUSION</u>

For the reasons discussed above, Defendants' unopposed motion for partial summary judgment is granted, in its entirety, and Defendants' unopposed motion to dismiss the amended complaint is granted as to the remaining claims.

This Memorandum Order resolves docket entry nos. 30 and 37. The Clerk of Court is respectfully directed to enter judgment and close this case.

**\*8**  Chambers will mail a copy of this Memorandum Order to the <u>pro se</u> Plaintiff.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 19705

## Footnotes

1   Corporation counsel of the **City** of **New York** moved for the relief described herein. Corporation counsel noted that it does not currently represent Defendant C.O. Cowan and Captain Doe but "respectfully requests that any relief granted to Defendants be extended to these individuals." (Docket entry no. 31, at 1 n.1.)

2   The allegations summarized here are taken from the Amended Complaint and are presumed true for the purposes of this motion practice.

3   Defendants refer to the 2018 lockdown as occurring in December 2018, but Plaintiff's Amended Complaint alleges that it occurred in September 2018. Therefore, the Court will refer to the 2018 lockdown at issue here as the September 2018 lockdown.

**End of Document**                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

...

2022 WL 4719172
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ako BURRELL, Plaintiff,
v.
Robert MACIOL, et al., Defendants.

9:19-CV-1629 (TJM/ATB)
|
Signed October 3, 2022

**Attorneys and Law Firms**

Ako K. Burrell, Malone, NY, Pro Se.

Harold L. Moroknek, Marshall Dennehey Warner Coleman & Goggin, Purchase, NY, Patrick M. Carey, Marshall, Dennehey Law Firm—Erie Office, Erie, PA, for Defendant Trinity Food Service Group Incorporated.

Patrick M. Carey, Marshall, Dennehey Law Firm—Erie Office, Erie, PA, for Defendant Jennifer Sowers.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

**\*1** This pro se action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Andrew T. Baxter, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In the relevant portions of the amended civil rights complaint, plaintiff alleges Fourteenth Amendment due process violations, allegedly committed by defendants Trinity Food Service Group Incorporated ("Trinity") and Jennifer Sowers relating to plaintiff's diet at Oneida Correctional Facility ("OCF") between October of 2016 and October of 2017. (Amended Complaint ("AC")) (Dkt. No. 42). After prior decisions on various motions, familiarity with which is presumed, Trinity and Sowers are the only defendants remaining in this action. Presently before the Court is a motion for summary judgment filed by these two defendants. (Dkt. Nos. 123, 145 (amended memorandum of law)). In his August 26, 2022 Report-Recommendation, Judge Baxter recommends that the motion be granted and the amended complaint against both Trinity and Sowers be dismissed. See

Report-Recommendation ("Rep. Rec."), Dkt. No. 154. Judge Baxter's recommendation is based on two separate reasons. One, that a general release plaintiff signed prevents him from bringing this action for inadequate food either against defendant Trinity or defendant Sowers, a Trinity employee. See Rep. Rec. at 9-18. Two, that the claims against Trinity and Sowers fail on the merits. See id., at 18-27. Plaintiff filed objections to Judge Baxter's recommendations.

**II. STANDARD OF REVIEW**

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

**III. DISCUSSION**

The Court has carefully reviewed plaintiff's objections. [1] For the reasons that follow, these objections are overruled.

To the extent plaintiff argues that he was unaware that the general release would be "used in [the defendants'] motion," the argument is belied by defendants' motion papers. In both their memorandum of law and amended memorandum of law, defendants make the specific argument that the general release that plaintiff signed released defendants from the claims against them in this action. See Dkt. No. 123-2, at 11-12; Dkt. No. 145, at 11-12. Thus, plaintiff's objection in this regard is overruled.

**\*2** To the extent plaintiff argues that the general release cannot be considered on the underlying motion because the defendants did not disclose in their January 28, 2022 supplemental disclosures that the general release would be a basis of defendants' defense, the argument is without merit. In their supplemental disclosures, defendants listed as documents or information known by the defendants to be relevant to their defenses to include "[a]ny document discovered or otherwise uncovered during the course of discovery," and "[a]ny document identified or produced by the plaintiff or any other party." See Dkt. No. 155, CM/ECF p.10. As Judge Baxter explained, plaintiff signed the general

release on February 7, 2020 to settle two cases in return for consideration of $10,000, and the general release was applied in this case to dismiss claims against other defendants. *See* Rep. Rec. at 2, 10-14. In fact, plaintiff has appealed to the Second Circuit Court of Appeals the decision finding the general release covered claims in this action. *See id.* at 2-3, 5-6. Further, the general release was attached as an exhibit to the defendants' motion. *See* Dkt. No. 123-7. The general release was clearly discovered during the course of discovery in this case and/or was a document identified or produced by any other party. Although the defendants did not specifically list this document in their supplemental disclosures, plaintiff was certainly aware of the contents of the general release and that it had been used as a defense to nearly identical claims against other defendants in this action. Plaintiff fails to establish that he was prejudiced by the defendants' failure to list the general release in their supplemental disclosures. Accordingly, plaintiff's objection in this regard is overruled.

Plaintiff also objects on the ground that Judge Baxter "failed to dismiss the defendants' motion for summary judgment" even though there were "deficits" in their memorandum of law that "failed to conform to" NYND Local Rule 7.1(b)(1). This appears to be a re-argument of plaintiff's contention that because defendants' memorandum of law lacked a table of contents and a table of authorities as required by the Local Rules, their entire motion should "not be reviewed by this Court" because the Court "lacks jurisdiction" to consider it. *See* Dkt. No. 140-1, CM/ECF pp. 15-16. [2] The argument is without merit. As the defendants indicated in their reply brief, they amended their memorandum of law to include the required table of contents and table of authorities. *See* Dkt. No. 145. This amendment was with permission of Judge Baxter and over plaintiff's objection to amendment. *See* Dkt. No. 149 (04/25/22 Text Order). [3] Plaintiff has not demonstrated that he was prejudiced by the defendants' initial memorandum of law, or that Judge Baxter erred by allowing this amendment. Further, plaintiff has supplied no authority for the proposition that Judge Baxter lacked jurisdiction and thus could not review the motion because of the stated deficiencies in the original memorandum of law.

The Court finds that Judge Baxter did not err in allowing amendment of the memorandum of law or in reviewing the defendants' motion for summary judgment. Accordingly, plaintiff's objection in this regard is overruled

**\*3** Plaintiff's objections addressed to whether the general release can be applied to the claims against the remaining defendants are simply attempts to reargue issues addressed and resolved by Judge Baxter. The Court has reviewed these issues de novo, and agrees with Judge Baxter's analysis and conclusions as stated in the Report-Recommendation at pages 9 to 18. *See* Rep. Rec. at 9-18. Accordingly, plaintiff's objections in these regards are overruled.

Plaintiff also files objections attempting to reargue the substantive merits of the Fourteenth Amendment claims against the remaining defendants. The Court has reviewed these issues de novo and agrees with Judge Baxter's analysis and conclusions as stated in the Report-Recommendation at pages 18 to 27. *See* Rep. Rec. at 18-27. Accordingly, plaintiff's objections in these regards are overruled.

## IV. CONCLUSION

After reviewing plaintiff's objections and conducting a de novo review of the issues raised by the objections, the Court **ACCEPTS** and **ADOPTS** Judge Baxter's August 26, 2022 Report-Recommendation (Dkt. No. 154) for the reasons stated therein and for the reasons discussed above. Therefore, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 123) is **GRANTED**, and the amended complaint is **DISMISSED IN ITS ENTIRETY** as against the remaining defendants **TRINITY** and **SOWERS**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 4719172

## Footnotes

1   The Court notes that plaintiff's objections are disjointed in that they appear to omit sequentially numbered pages and/or paragraphs. Nevertheless, the Court has carefully reviewed the document submitted as plaintiff's objections along with the attached exhibits.

2   Plaintiff also references the portion of NDNY LR 7.1(b)(1) that requires a movant to provide a pro se litigant with copies of unpublished decisions referenced in the memorandum of law. Plaintiff's objection to the defendants' motion to amend the memorandum of law appears to focus only on its lack of a table of contents and a table of authorities. *See* Dkt. Nos. 147, 148. However, to the extent that plaintiff contends that the lack of a table of authorities would prejudice him because he "would not be able to view the cases in the table of contents [sic]", Dkt. No.147, at CM/ECF p. 1, plaintiff fails to demonstrate that he was prejudiced by such a deficiency in the defendants' papers. The only unpublished decision referenced in the defendants' memorandum of law, *Bess v. City of New York*, 2013 WL 1164919 (S.D.N.Y. March 19, 2013), is also referenced in plaintiff's memorandum of law, *see* Dkt. No. 140-1, CM/ECF pp. 4, 5, thus indicating that plaintiff was aware of this decision and consequently suffered no prejudice by the defendants' failure to comply with the requirement that unpublished decisions be provided to pro se litigants.

3   ("TEXT ORDER DENYING 147 148 plaintiff's opposition to the request of 141 defense counsel to file an amended memorandum of law in support of 123 defendant Trinity Food Service Group, Inc.'s summary judgment motion. The amendment sought to add only a very terse table of contents and a table of authorities cited in the text of the brief, pursuant to the requirements of NDNY's Local Rules. Plaintiff is not prejudiced by this pro forma amendment of the defense brief, as the tables of content and authorities do not meaningfully alter the substance of the original brief.").

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 3904110
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul FENTON, Plaintiff,

v.

Cynthia PROVOW, [1] and Kristen Deep, Defendants.

9:20-CV-1564 (BKS/DJS)

|

Signed August 5, 2022

**Attorneys and Law Firms**

PAUL FENTON, Plaintiff, Pro Se, 42671604, CNYPC, P.O. Box 300, Marcy, New York 13403.

HON. LETITIA JAMES, New York State Attorney General, ADRIENNE J. KERWIN, ESQ., Assistant Attorney General, Attorney for Defendants, The Capitol, Albany, New York 12224.

**REPORT-RECOMMENDATION and ORDER** [2]

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Pro se Plaintiff Paul Fenton ("Plaintiff") brought this action under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights under the Fourteenth Amendment while he was civilly confined at Central New York Psychiatric Facility. Dkt. No. 1, Compl. Following initial review, United States District Judge Brenda K. Sannes ordered that Plaintiff's Fourteenth Amendment due process claims against both Defendant Cynthia Provow and Defendant Kristen Deep proceed. Dkt. No. 3. Defendants have now moved for summary judgment requesting that the Court dismiss Plaintiff's claims. Dkt. No. 18. Plaintiff's response to the Motion consists only of a letter setting forth his factual allegations. Dkt. No. 21. Defendants then submitted a Reply to Plaintiff's letter. Dkt. No. 22, Reply. For the following reasons, this Court recommends that the Motion for Summary Judgment be granted.

**I. BACKGROUND**

Plaintiff has been civilly confined at Central New York Psychiatric Facility since May 2017. Dkt. No. 19, Declaration of Cynthia Provow ("Provow Decl.") at ¶ 6; Dkt. No. 19-1, Declaration of Kristin Deep ("Deep Decl.") at ¶ 6. He has a history of ulcerative colitis and associated stomach issues dating back at least fifteen years. Dkt. No. 18-3, Reiner Decl., Ex. A, Plaintiff's Deposition ("Pl.'s Dep.") at p. 14. Although the exact timeline is unclear, sometime after he arrived at CNYPC from DOCCS custody, Plaintiff began having increased stomach pain and requested to see a gastrointestinal ("GI") specialist. Compl. at ¶¶ 2, 3. At various points during the relevant time period, Defendant Kristen Deep, a Nurse Practitioner, and Defendant Cynthia Provow, M.D., were responsible for Plaintiff's medical care at CNYPC. Deep Decl. at ¶ 6; Provow Decl. at ¶ 6. Plaintiff claims that he waited for more than two and a half years, in severe pain every day, but was never sent out to see a GI specialist. Compl. at p. 3. Instead of his complaints being addressed, Plaintiff alleges that he was "passed on from doctor to doctor" while he continued to experience a lack of adequate medical treatment. *Id.* On initial review, Plaintiff's Complaint was liberally construed by the Court to assert a claim for medical indifference based upon the allegations that Defendants refused to send him to a specialist despite his repeated complaints of pain. Dkt. No. 3 at p. 7.

Within this claim for medical indifference, Plaintiff asserts several ways in which he alleges that the medical care provided was inadequate. First, he asserts that he was not provided with regular colonoscopies. Pl.'s Dep. at pp. 52-53. Second, he alleges that he was denied surgery for a hernia. Pl.'s Dep. at p. 22. Third, he asserts that a particular medication given for treatment of his colitis was not administered as frequently as it should have been. Pl.'s Dep. at pp. 51-52. He has also asserted that Defendants failed to send him to a GI specialist even though he was "bleeding very badly" and felt that he should be seen on an emergency basis rather than having to wait for an appointment. Pl.'s Dep. at pp. 33, 44.

**II. STANDARD OF REVIEW**

**\*2** Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any,"

that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(C); see also *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), accord, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A party opposing summary judgment is required to submit admissible evidence." *Perry v. Rupert*, 2016 WL 11478229, at *3 (N.D.N.Y. Apr. 19, 2016) (citing *Spiegel v. Schulman*, 604 F.3d 72, 81 (2d Cir. 2010)). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). As a result, in order to defeat summary judgment, "nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## III. DISCUSSION

**\*3** Defendants Provow and Deep seek summary judgment on the sole ground that Plaintiff has failed to establish deliberate indifference to his medical needs as a matter of law. Dkt. No. 18-1, Defs.' Mem. of Law at pp. 2-9. Defendants argue that Plaintiff's GI conditions were carefully and regularly monitored, that he was consistently provided with adequate treatment, and that at no point was there cause to believe that an emergency condition existed which necessitated more urgent treatment. *Id.* Because the Court concludes that the undisputed evidence in the record demonstrates the lack of deliberate indifference on the part of both Defendants, it recommends that the Motion be granted on that basis.

### A. Deficiencies in Plaintiff's Opposition

As required under Local Rule ("L.R.") 56.1, Defendants have filed a statement of material facts which includes specific citations to the summary judgment record. Dkt. No. 18-2, Def.'s Rule 56.1 Statement. Plaintiff has not formally responded to this statement. Instead, his only response was a short letter which reiterates many of the same assertions contained within the Complaint. Dkt. No. 21. He has not provided the Court with any additional facts or admissible

evidence aside from those allegations contained within the initial Complaint and subsequent Letter. [3]

Where, as here, a party has failed to respond in the manner required under L.R. 56.1(b), the rule "provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion." *Perry v. Rupert*, 2016 WL 11478229, at *4 (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)). However, courts also have "broad discretion to determine whether to overlook a failure to comply with local rules." *Id.* To that end, the only materials that the Court has available to consider in opposition to the Motion are the unsworn statements contained within Plaintiff's submissions. Although "unsworn statements are generally inadmissible in opposition to a motion for summary judgment," courts have nonetheless "been known to consider unsworn statements in opposition" on motions involving pro se plaintiffs. *Id.* As a result, such unsworn statements may be considered, but only to the extent that they are based on Plaintiff's personal knowledge or are otherwise supported by admissible evidence in the record. *Id.* Accordingly, the Court has considered the unsworn statements contained in Plaintiff's submissions, subject to the previously referenced caveats, in an effort to afford special solicitude given his pro se status.

**B. Merits of Plaintiff's Claim**

Plaintiff's claim for medical indifference as a civilly confined individual is governed by the Due Process Clause of the Fourteenth Amendment, rather than by the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019); *Williams v. Sykes*, 2019 WL 2374116, at *2 (N.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 2369882 (N.D.N.Y. June 5, 2019). The standard under the Due Process Clause is similar in this context to that under the Eighth Amendment, requiring the plaintiff first to satisfy "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of [constitutional rights]" and second, to satisfy a " 'mental element prong' - showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also*

*Bell v. Carson*, 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

**\*4** The first prong is evaluated under an objective standard and considers whether the alleged deprivation of adequate medical care was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "In the medical care context, analyzing this objective requirement involves two inquiries: whether the [plaintiff] was actually deprived of adequate medical care, and whether the inadequacy in medical care is sufficiently serious, which in turn requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the [plaintiff]." *Johnson v. Schiff*, 2019 WL 4688542, at *11 (quoting *Salahuddin v. Goord*, 467 F.3d at 279-80) (quotation marks omitted). Defendants have conceded for purposes of this Motion that Plaintiff's "ulcerative colitis and associated issues demonstrate a sufficiently serious medical condition," and instead dispute that Dr. Provow and Nurse Practitioner Deep were deliberately indifferent to Plaintiff's medical needs. Defs.' Mem. of Law at pp. 4-5.

Consideration of Defendants' Motion, therefore, turns primarily upon the second prong, referred to as the mens rea or mental element prong. In contrast to the standard under the Eighth Amendment, in the Fourteenth Amendment context, it is not necessary for a plaintiff to establish subjective "proof of a malicious or callous state of mind" on the part of the defendant. *Charles v. Orange Cnty.*, 925 F.3d at 86 (citing *Darnell v. Pineiro*, 849 F.3d at 33-34). Instead, in the context of a Fourteenth Amendment Due Process claim, deliberate indifference "can be shown by something akin to recklessness." *Id.* The Second Circuit has explained that " 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell v. Pineiro*, 849 F.3d at 29 (citing *Farmer v. Brennan*, 511 U.S. at 836-37). As a result, deliberate indifference can be proven by "showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety.' " *Charles v. Orange Cnty.*, 925 F.3d at 87.

Despite a somewhat-lessened threshold, evidence of mere negligence will not suffice. *Id.* "Thus, mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." *Id.* (quoting *Cuoco v. Moritsugo,* 222 F.3d 99, 107 (2d Cir. 2000)). Accordingly, a plaintiff "asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to [his] health." *Id.* (emphasis in original).

Plaintiff's complaints largely stem from what he views as a failure to send him to appropriate specialists to treat his ongoing ulcerative colitis and hernia, fault for which he attributes to Defendants Deep and Provow. *See, e.g.,* Compl. In response, Defendants assert that Plaintiff received regular medical treatment for his conditions, and that difficulty in scheduling appointments with specialists was a result of the ongoing COVID-19 pandemic and therefore outside of their control. Defs.' Mem. of Law at p. 5. Defendants also argue that Plaintiff's history of noncompliance with treatment has exacerbated his symptoms. *Id.* Per Plaintiff's own statements, his history of ulcerative colitis and associated stomach issues predate his time at CNYPC, going back more than fifteen years. Pl.'s Dep. at p. 14. Ulcerative colitis "is a chronic inflammatory bowel disease that causes inflammation and ulcers in the large intestine (colon)." Provow Decl. at ¶ 8. The disease can "range from mild to severe" with symptoms that include "rectal bleeding, bloody diarrhea, abdominal cramps, and pain" and may be subject to intermittent flare-ups. *Id.* Ulcerative colitis has no cure, although symptoms and flare ups "can be maintained through diet changes, medications, or, in rare cases, surgery." *Id.*

 **\*5** Defendant Kristen Deep, a Nurse Practitioner at CNYPC, was Plaintiff's primary care provider from October 2018 until October 2019. Deep Decl. at ¶ 6. Plaintiff alleges that he informed Deep of his stomach pain, hernia, and rectal bleeding, and she told him that she would put in a referral to a GI specialist. Compl. at p. 2, ¶ 6. However, Plaintiff claims he waited for two and a half years, in severe pain every day, and "never once" saw a GI specialist. *Id.* at p. 3, ¶ 7. Instead, he was "passed on from doctor to doctor" and now has Dr. Provow as a care provider. *Id.* at ¶ 9. Plaintiff began treating

with Dr. Provow in October of 2020, just two months prior to the filing of the suit. *See* Provow Decl. at ¶ 6; Compl. (filed December 16, 2020).

Despite Plaintiff's allegations to the contrary, medical records demonstrate that both Defendants provided consistent care and treatment for his abdominal issues. As part of that treatment at CNYPC, Plaintiff was prescribed medications to manage ulcerative colitis and constipation including dicyclomine, docusate sodium, hydrocortisone acetate, mesalamine, psyllium, and various vitamin supplements. Provow Decl. at ¶ 9. Although Plaintiff was provided with these prescribed medications and repeatedly counseled on the importance of medication compliance to minimize symptom flare ups, the undisputed record shows that he often failed to take them. Provow Decl. at ¶ 12, Ex. A. For example, the record demonstrates that Plaintiff refused approximately 121 doses of medication for ulcerative colitis and other stomach issues in the time period from October 5, 2020 to November 22, 2020 alone. *Id.* Plaintiff's own statements confirm this documented noncompliance. When asked at his deposition how often he refused to take his medication, Plaintiff's response was that he "refused all the time." Pl.'s Dep. at p. 66 ("Q: But while you were treating with Nurse Deep and Dr. Provow, how frequently would you say that you refused to take your medication? A: I refused all the time, but I do take it.").

In addition to those medications administered at CNYPC, Plaintiff received regular Remicade infusions at Faxton St. Luke's Healthcare and St. Elizabeth Medical Center. *Id.* at ¶ 10. Remicade is a treatment for moderate to severe ulcerative colitis that is administered intravenously with "maintenance doses" provided every eight weeks, following a more frequent schedule of initial doses. *Id.* Plaintiff claimed during his deposition that he should be receiving infusions every four weeks, rather than every eight. Pl.'s Dep. at pp. 47-48. To the extent that Plaintiff believed those infusions should have happened more frequently, "a mere disagreement as to the medically proper course of treatment is not a sufficient basis for a deliberate indifference claim[ ]." *Perry v. Rupert,* 2016 WL 11478229, at \*9 (citing *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir. 1998)).

Moreover, Dr. Provow explained that the generally prescribed schedule for a patient receiving Remicade is as follows: "Three starter doses are administered to the individual: the initial dosage, followed by a dose two weeks after the initial dose and a third dose six weeks after the initial dose.

After the starter doses, one maintenance dose is administered every 8 weeks." Provow Decl. at ¶ 10. In response to Plaintiff's continued symptoms, Dr. Provow subsequently updated Plaintiff's infusion schedule to receive infusions every six weeks instead. Provow Decl. at ¶ 16. As is the case with his other medications, Plaintiff's own noncompliance undercuts his conclusory claims of deliberate indifference against Defendants with respect to the Remicade infusions, too. For example, a medical note from August 25, 2020 documents that Plaintiff was "argumentative" and claimed he had not received his Remicade infusion, however, the writer of that note stated that Plaintiff had previously refused his Remicade infusion on July 6, 2020. Deep Decl., Ex. D at p. 30; Provow Decl. at ¶ 15. Dr. Provow also noted that Plaintiff was scheduled to receive a Remicade infusion in November 2021, but refused to comply with the required pre-infusion blood draw, which resulted in that infusion being cancelled. Provow Decl. at ¶ 16.

**\*6** Rather than demonstrating evidence of deliberate indifference, the record instead shows that Plaintiff received regular attention and care despite his frequent refusal to cooperate with treatment. For example, on June 27, 2019, Deep changed the dosage of Plaintiff's mesalamine prescription for ulcerative colitis in accordance with the recommended guidelines. Deep Decl., Ex. B, p. 13. On July 22, 2019, Deep met with Plaintiff to review lab results, and ordered supplements based on the results of those labs. *Id.* at p. 14. On August 13, 2019, she reviewed Plaintiff's CT scan and thyroid lab results and discussed with him the importance of medication compliance. *Id.* at p. 15. On October 7, 2019, Deep brought Plaintiff in to again discuss the importance of medication compliance with medications provided for his ulcerative colitis. *Id.* at p. 16. Plaintiff also stated during his deposition that he saw Defendant Deep weekly to discuss his medical concerns. Pl.'s Dep. at p. 29.

Plaintiff asserts, in a wholly conclusory manner, that Defendants Deep and Provow refused to send him to a GI specialist while he experienced "constant pain and suffering." Dkt. No. 21 at p. 1. Plaintiff also asserts that "Nurse Deep told Dr. Provow not to send [him] out for medical attention" and that he was instructed to stay in his room while he was bleeding. *Id.* at pp. 1-2. However, he has set forth no evidence in support of these assertions. "Mere conclusory allegations that are unsupported by any record evidence are insufficient to give rise to a genuine dispute of material fact." *Smith v. Rosati,* 2013 WL 1500422, at \*12 (N.D.N.Y. Feb. 20, 2013). Nor has Plaintiff alleged any personal knowledge regarding the

basis for this assertion. Evidence in opposition to a motion for summary judgment "must be based on personal knowledge." *Perry v. Rupert,* 2016 WL 11478229 (citing *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004)).

At the time Plaintiff's suit was filed, he had only been treating with Dr. Provow for approximately two months. *See* Compl.; Provow Decl. at ¶ 6. Like Defendant Deep, Defendant Provow detailed the difficulties experienced when trying to schedule appointments with outside providers, particularly during the COVID-19 pandemic. Provow Decl. at ¶¶ 18-22; Deep Decl. at ¶ 9. Deep and Provow, as providers at CNYPC, are not personally responsible for scheduling patients with outside providers. Deep Decl. at ¶ 9; Provow Decl. at ¶ 18. Instead, CNYPC providers make referrals to specialists, and appointments are then scheduled through the Office of Mental Health in Albany. *Id.* Deep states that Plaintiff's medical file shows that on August 21, 2018, non-party CNYPC nurse practitioner Josephine Slifka ordered a gastrointestinal consult for Plaintiff with an outside provider. Deep Decl. at ¶ 8. That appointment was scheduled for April 10, 2019. *Id.* However, on February 15, 2019, Plaintiff left CNYPC and was brought to Manhattan Psychiatric Center to attend mandatory court appearances in New York City. Deep Decl. at ¶ 10. As a result, the April 10 appointment was cancelled, and Plaintiff was instead seen in the GI clinic at MPC. *Id.,* Ex. A, p. 7. A colonoscopy was scheduled for April 30, 2019 while Plaintiff was at MPC, *id.,* although Plaintiff refused to attend that appointment, reportedly because he knew he would be returning to CNYPC. Deep Decl. at ¶ 12 & Ex. B at p. 11. Plaintiff's documented refusal to attend a scheduled colonoscopy seriously undermines his conclusory allegation that he failed to receive regular colonoscopies as the result of deliberate indifference from his medical providers. *Wright v. Genovese,* 694 F. Supp. 2d 137, 157 (N.D.N.Y. 2010).

Moreover, the record shows that Plaintiff has in fact received colonoscopies, although perhaps not as frequently as he would have liked. When Dr. Provow took over Plaintiff's care in October 2020, his originally scheduled GI appointment had already been cancelled. Provow Decl. at ¶ 20. In November 2020, Dr. Provow called to inquire about the status of a GI consult for Plaintiff, but by winter of 2020/2021 an increase in cases of COVID again led to non-emergent appointments being cancelled. *Id.* at ¶¶ 21-22. Plaintiff did receive a colonoscopy on February 26, 2020, but in 2021 Dr. Provow again encountered difficulties scheduling Plaintiff for a colonoscopy due to the pandemic. *Id.* at ¶ 26. He was

seen on June 8, 2021 for a GI consult by way of video teleconferencing, *id.* at ¶ 23, and in the interim, Dr. Provow regularly tested Plaintiff's hemoglobin levels to ensure that he was not experiencing excessive bleeding which could indicate a need for emergency treatment. Provow Decl. at ¶ 27. To the extent that Plaintiff believes his condition warranted more urgent emergency treatment, Dr. Provow clearly stated that in her professional medical opinion, emergency treatment was not warranted at any point. *Id.* Plaintiff's disagreement with Dr. Provow's professional judgment cannot provide a basis for a claim of deliberate indifference, because while he may be entitled to adequate treatment, he does not have a constitutional "right to [the] treatment of his choice." *Perry v. Rupert,* 2016 WL 11478229, at *9 (citing 🚩 *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir. 1986)).

*7 Next, Plaintiff has alleged that the Defendants failed to schedule him to see a GI specialist for hernia surgery. Pl.'s Dep. at p. 22. He testified at his deposition that during his time at MPC he was diagnosed with a hernia and hospitalized for an exacerbation of his ulcerative colitis. Pl.'s Dep. at pp. 19-20. During the three months that Plaintiff was at another facility, Deep could not be fairly said to be responsible for any inadequacies in his medical care. Plaintiff did return to CNYPC after May 15, 2019, at which time Deep resumed responsibility for his care. Deep Decl. at ¶ 10. However, the records do not support that either Defendant displayed deliberate indifference to his medical needs upon his return.

Plaintiff complained of rectal bleeding on June 8, 2019, Ex. B. at p. 10, but refused his annual physical examination with Deep on June 18, 2019. *Id.* at p. 12. On June 25, 2019, Plaintiff's annual physical exam was completed during which time Defendant Deep noted a tennis-ball sized bulge and ordered abdomen and pelvis CAT scans to rule out an umbilical hernia. Deep Dep. Ex. B. at p. 13; Provow Decl. at ¶ 30. The scans were performed on July 31, 2019 and confirmed the presence of a midline ventral hernia. Provow Decl. at ¶ 30. On August 13, 2019, Deep reviewed the CAT scan results with Plaintiff during a follow-up visit. Deep Decl. Ex. B at p. 16. Treatment notes from October 16, 2019 document the presence of an abdominal wall hernia which was not incarcerated, and further note that a GI consult was pending. *Id.* at p. 17. Dr. Provow ordered a repeat scan of Plaintiff's hernia on November 13, 2020, after she had taken over his care. Provow Decl. at ¶ 31. The hernia had increased in size at that time but showed "no evidence of incarceration or strangulation" [4] which might necessitate a more urgent course of treatment. *Id.* Despite

frequent education and counseling from his providers on the importance of treatment compliance, Plaintiff continued to refuse medication regularly, including those prescribed to prevent constipation related to his colitis. *See* Provow Decl. at ¶¶ 9, 12 (noting that Plaintiff was prescribed psyllium and docusate sodium to treat constipation, but that he frequently refused to take medications as prescribed). Dr. Provow opined, and Plaintiff acknowledged, that the straining associated with constipation can cause a hernia to increase in size. Provow Decl. at ¶ 29; Pl.'s Dep. at p. 18.

Plaintiff was scheduled to have hernia surgery on at least two occasions, but those appointments were cancelled when elective surgeries were paused in response to the COVID-19 pandemic. Provow Decl. at ¶ 32. However, he did eventually undergo hernia surgery on December 30, 2021. *Id.* at ¶ 33. The hernia was routinely monitored by Dr. Provow in the interim to ensure that it had not elevated to an emergency condition. Provow Decl. at ¶ 32. That Plaintiff may have preferred more prompt surgical intervention does not, on this record, provide the basis for a constitutional violation. *Jamel L. Jenkins v. Dr. Trachtman,* 2017 WL 7163935, at *4 (N.D.N.Y. Dec. 21, 2017), *report and recommendation adopted sub nom., Jenkins v. Trachtman,* 2018 WL 626303 (N.D.N.Y. Jan. 30, 2018), *see also* 🚩 *Johnson v. Wright,* 477 F. Supp. 2d 572, 576 (W.D.N.Y. 2007). Dr. Provow continued to monitor Plaintiff following his return to CNYPC after surgery and noted that he was "responding well." Provow Decl. at ¶ 33. However, Plaintiff continued to be non-compliant with recommended treatment by medical professionals, ignoring post-operative instructions to wear an abdominal binder at all times following the surgery. *Id.* Where, as here, there is no evidence that a delay in treatment was motivated by disregard for Plaintiff's care, no evidence that the delay had any significant impact on the eventual course of treatment, and ample documentation that his medical needs were otherwise addressed during the delay, deliberate indifference has not been established. *Pabon v. Goord,* 2003 WL 1787268, at *10-11 (S.D.N.Y. Mar. 28, 2003).

*8 To the extent that Plaintiff faults Defendants Deep and Provow for the delays in his appointments with specialists, the record demonstrates that Defendants, as referring providers from CNYPC, did not and could not determine when Plaintiff would be seen by outside specialists. As a result, even if the Court were to find the delay unduly long, the delays were not attributable to Defendants and thus cannot provide a basis for the type of "conduct necessary to establish deliberate indifference." *Byrd v. Miller,* 2018 WL

5493036, at *4 (N.D.N.Y. Sept. 27, 2018). Furthermore, by all accounts, Defendants Provow and Deep made reasonable efforts to obtain specialist appointments for Plaintiff and continued to monitor and address his underlying medical issues in the interim. This too establishes the lack of deliberate indifference. *Bennett v. Care Correction Sol. Med. Contracter*, 2017 WL 1167325, at *8-9 (S.D.N.Y. Mar. 24, 2017). A difference of opinion between Plaintiff and his medical providers "regarding medical treatment does not constitute deliberate indifference." *Perry v. Rupert*, 2016 WL 11478229, at *9 (citing *Chance v. Armstrong*, 143 F.3d at 709). Nor will deliberate indifference be found when a plaintiff "simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." *Id.* (citation omitted). Finally, Plaintiff's own refusal to comply with treatment seriously undermines his conclusory claims that the treatment provided by Defendants was constitutionally inadequate. *See* 🚩*Wright v. Genovese*, 694 F. Supp. 2d at 157.

Accordingly, the Court finds that given the evidence of treatment Plaintiff received while at CNYPC, no reasonable jury could find that either Deep or Provow was deliberately indifferent to Plaintiff's serious medical needs. *See* 🚩*Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the nonmovant failed to provide "evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim.") (internal quotation marks omitted). The Court therefore recommends that summary judgment be granted due to Plaintiff's failure to establish deliberate indifference on the part of either Defendant.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 18) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 🚩28 U.S.C. § 636(b)(1), the parties have fourteen (14) days [5] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. 🚩*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing 🚩*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 🚩28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2022 WL 3904110

## Footnotes

1    Plaintiff's initial Complaint names Cynthia "Provel." Dkt. No. 1, Compl. However, it appears from the submissions that the correct spelling is "Provow." *See* Dkt. No. 19, Declaration of Cynthia Provow ("Provow Decl."). The Clerk shall update the docket accordingly.

2    This matter was referred to the undersigned for a report-recommendation pursuant to 🚩28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

3    The Court notes that Plaintiff's letter references "witness testimony" of a Kimberly Brown, which he indicates he sent to Defendants' counsel. Dkt. No. 21 at pp. 1-2. However, he has not provided the Court with a copy of that testimony.

4       Provow notes that "[a] hernia is incarcerated if part of the intestine or abdominal tissue becomes trapped in the sac of the hernia, producing a bulge in the weak spot of the abdominal wall, whereas a strangulated hernia can cut off blood flow to part of the intestine." Provow Decl. at ¶ 28.

5       If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 3908799
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul FENTON, Plaintiff,

v.

Cynthia PROVOW and Kristen Deep, Defendants.

9:20-cv-1564 (BKS/DJS)
|
Signed August 30, 2022

**Attorneys and Law Firms**

Plaintiff pro se: Paul Fenton, 42671604, CNYPC, P.O. Box 300, Marcy, NY 13403.

For Defendants: Letitia James, Attorney General of the State of New York, Adrienne J. Kerwin, Assistant Attorney General, of Counsel, The Capitol, Albany, NY 12224.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

 **\*1** Plaintiff pro se Paul Fenton brought this action under 42 U.S.C. § 1983, asserting Fourteenth Amendment deliberate medical indifference claims against Defendants Cynthia Provow and Kristen Deep arising during his civil confinement at the Central New York Psychiatric Facility. (Dkt. No. 1). On January 18, 2022, Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 seeking dismissal of Plaintiff's complaint. (Dkt. No. 18). This matter was referred to United States Magistrate Judge Daniel J. Stewart who, on August 5, 2022, issued a Report-Recommendation recommending that Defendants' motion for summary judgment be granted. (Dkt. No. 26). Plaintiff has filed a timely objection to the Report-Recommendation. (Dkt. No. 27). For the following reasons, the Report-Recommendation is adopted.

**II. STANDARD OF REVIEW**

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012);

28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at \*2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Molefe*, 602 F. Supp. 2d at 487.

**III. DISCUSSION**

Plaintiff's objection to the Report-Recommendation reads, in its entirety: "I object to the decision of being den[ied]. I want an appeal. Under reasons Court did not get helpful Counsel discovery." (Dkt. No. 27, at 2). Plaintiff has failed to properly preserve an objection to the Report-Recommendation. His letter objecting to "the decision" in its entirety fails to identify any portion of the Report-Recommendation that Plaintiff asserts to be error and the basis for that assertion. *Machicote*, 2011 WL 3809920, at \*2, 2011 U.S. Dist. LEXIS 95351; *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). Moreover, to the extent Plaintiff's reference to "helpful Counsel discovery" challenges the denial of his motions for the appointment of pro bono counsel, such a challenge is not an objection to the Report-Recommendation. [1] The Court's review is therefore for clear error. The Court has reviewed the Report-Recommendation and finds no clear error in Magistrate Judge Stewart's finding that "no reasonable jury could find that either Deep or Provow was deliberately indifferent to Plaintiff's serious medical needs" and recommendation that Defendants' motion for summary judgment be granted. (*See* Dkt. No. 26, at 19–20). Accordingly, the Court adopts the Report-Recommendation.

**IV. CONCLUSION**

 **\*2** For these reasons, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 26) is **ADOPTED**; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 18) is **GRANTED**, and the Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 3908799

## Footnotes

1    In any event, the Court finds no error in Magistrate Judge Stewart's denial of Plaintiff's requests for pro bono counsel given Plaintiff's failure to substantiate those requests. (*See* Dkt. Nos. 12, 13, 23, 24).

---

**End of Document**                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   2

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 91 of 101

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1**  This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND

Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

 **\*2**  Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We

Case 3:23-cv-01107-DNH-ML    Document 5    Filed 09/29/23    Page 92 of 101

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

## 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and

Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branman v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts

that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

### II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 94 of 101

to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to ⚑ 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. ⚑ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; ⚑ *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

---

## Footnotes

1    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* ⚑ 28 U.S.C. § 1915(b)(3).

3    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4    The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 95 of 101

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

***MEMORANDUM–DECISION AND ORDER***

GARY L. SHARPE, Chief Judge.

**I. *Introduction***

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

**II. *Background***

**A. *Facts*** [1]

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to

accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

**B. *Procedural History***

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss, (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth and Fourteenth Amendments due to deliberate indifference;

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 96 of 101

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

(2) a *Monell*[2] claim against the City; (3) negligence; (4) a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in Ellis v. Cohen & Slamowitz, LLP, 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

#### A. *Preliminary Matters*

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19,

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 97 of 101

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

## B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

## C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see Pena v. DePrisco,* 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin,* 577 F.3d at 428 (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting *Pena,* 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting *Lewis,* 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Case 3:23-cv-01107-DNH-ML    Document 5    Filed 09/29/23    Page 98 of 101

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under *§ 1983* attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

 **\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for *§ 1983* liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

Case 3:23-cv-01107-DNH-ML   Document 5   Filed 09/29/23   Page 99 of 101

**Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)**

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See* ⚠ *Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at *10 (D.Vt. Dec.9, 2013)* (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y .,* No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014).

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

## Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See* 🚩 *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." 🚩 *Okin,* 577 F.3d at 428.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01107-DNH-ML    Document 5    Filed 09/29/23    Page 101 of 101

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.